**DICKINSON v. CARTER et al. (No. 8728.)**

(Court of Civil Appeals of Texas. Dallas. Dec. 16, 1922.)

1. Venue ☞7—Written offer followed by written acceptance constitutes written contract; "contract in writing."

A written offer on one side followed by a written acceptance on the other constitutes a contract in writing, under Rev. St. art. 1830, § 5, providing that, where a person has contracted in writing to perform an obligation in any particular' county, in which case suit may be brought either in such county or where defendant has his domicile, and this is true even though the offer or the acceptance contains conditions, provided such are not objected to, and are acted on by the parties; the law inferring that the minds of the contracting parties have met agreeably to the terms of the written instruments.

2. Venue ☞7—Contract performable in county in which draft attached to bill of lading covering shipment presented.

A contract is performable in part at least in that county in which the draft to which is attached a bill of lading covering a shipment is presented for payment.

3. Venue ☞7—Contract payable after maturity at particular place performable exclusively from such time at such place.

A contract payable at a particular place is performable at such place, and, if payable there after maturity, is performable exclusively from such time at such place.

4. Novation ☞4—Venue ☞7—Contract for shipment of coal performable at residence of seller after default in payment by buyer and not novated held maintainable in county of seller's residence.

Where a contract for the shipment of coal provided that, if the payments therein stipulated were not met promptly at maturity, they should become payable in the county of the residence of the seller, and such payments were not promptly met by the buyer, the contract was not "novated," meaning a substitution of a new obligation between the same parties with the intention to dismiss the old one, merely by the alteration of two of its minor provisions, all the others remaining unchanged, and an action for a breach of the contract was properly maintainable in the county of plaintiff's residence, under Rev. St. art. 1830, § 5.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

Appeal from Dallas County Court; T. A. Work, Judge.

Action by J. E. Dickinson against L. L. Carter and others. From an order sustaining defendants' pleas of privilege and that cause be transferred to county of their residence, plaintiff appeals. Reversed and remanded for trial on merits in county where instituted.

S. M. Leftwich and Etheridge, McCormick & Bromberg, all of Dallas, for appellant.

R. E. McKie, of San Marcus, and W. P. Donalson, of Dallas, for appellees.

SERGEANT, C. J. Appellees L. L. Carter and John Howe, residing at Buda, Hays county, Tex., and W. M. Woods, residing in that vicinity, but in Travis county, Tex., composed the firm of Carter Gin Company; appellant, J. E. Dickinson, resides in the city of Dallas, in Dallas county, Tex., where he is carrying on a coal and fuel business under the trade style of Dickinson Fuel Company. About April 20, 1920, appellees mailed a postal card from Buda to appellant at Dallas reading as follows:

"Buda, Texas,
"Dated, April 20, 1920.

"Dickinson Fuel Co., 1610½ Commerce St., Dallas, Texas. Please enter our order as follows subject to your usual condition of sale: 2 cars of best fancy nut. 1 car fancy nut. Remarks: Ship latter part of June. Be sure and give us good coal. Signed—Carter Gin Co.
"Address—Buda, Texas."

Appellant received this order and acknowledged receipt of the same in writing as follows:

"Dickinson Fuel Company, Dallas, Texas.

"Acknowledgment of order: Order No. 600. Placed by Carter Gin Co. Date 4–21–20. Destination—Buda, Texas. Ordered by card. Route—I. & G. N.

| No. Cars. | Kind of Coal. | Price. | Price to Us. | To Be Shipped. |
|---|---|---|---|---|
| 1 | fcy nut | | List when shipped | Latter part of June |

"The following is an exact copy of order to the mines and is shipped subject to the fol-

lowing conditions of sale: [Here follow four paragraphs not material to any issue herein].

"All agreements for payment hereunder, if not met promptly at maturity, shall become payable in Dallas County, Texas. We wish to thank you for this order which will have our best attention."

Appellant was unable to procure railroad cars for transportation of the coal in June, and on August 25 appellees wrote him a letter complaining at his failure to fulfill the contract and insisting upon delivery of the coal at once. Appellant replied that he was unable to ship coal of the character ordered, but that he could ship a different kind; the reason being that he could not get cars for the nut coal originally ordered. On September 16 appellee replied as follows:

"We are still depending on you to ship us coal we have booked with you. We prefer nut coal, but if you cannot ship nut, ship something else."

Accordingly appellant endeavored to fill the order by shipping "mine-run" coal in the quantity originally ordered. Bills of lading covering the shipments were attached to drafts on appellees in favor of appellant for the purchase price of the coal and were presented to appellees at Buda or payment. The coal was rejected, and the drafts dishonored, whereupon appellant sued appellees in Dallas for the purchase price. Appellees filed pleas of privilege asserting their right to be sued in the county of their residence, which pleas of privilege were controverted by appellant. On hearing, the court sustained the pleas of privilege and ordered the case transferred to Hays county. From such judgment and order of the court, appellant appeals.

[1] It first becomes necessary to determine if a contract in writing existed, and, if so, the place of its performance, as section 5 of article 1830 of the Revised Statutes of Texas recites:

"Where a person has contracted in writing to perform an obligation in any particular county, in which case suit may be brought either in such county, or where the defendant has his domicile."

By a long line of decisions the courts have held that an entire agreement does not necessarily have to be signed by both parties in order to constitute a "contract in writing." One may sign; the other may accept by conduct without signing. A written offer on one side, followed by a written acceptance on the other, constitutes a contract in writing, within the meaning of the statute, and this is true even though the offer or the acceptance contains conditions, provided such are not objected to, and are acted on by the parties. In such instance the law infers that the minds of the contracting parties have met agreeably to the terms of the written instruments.

In Warner Elevator Manufacturing Co. v. Maverick, 88 Tex. 489, 30 S. W. 437, 31 S. W. 353, 499, the court held that acceptance by telegram of a proposal in a letter constituted a contract in writing.

In Kelsey v. Early Grain & Elevator Co. (Tex. Civ. App.) 206 S. W. 849, it was held that a contract in writing existed where a broker, over the telephone, procured a sale, reduced its terms to writing, and mailed a copy to the seller and to the purchaser, both of whom received the same without protest.

In Gottlieb v. Dismukes (Tex. Civ. App.) 230 S. W. 792, a seller, by long-distance telephone, offered corn to a purchaser, advising that weight statements, bill of lading, and demand draft would be sent to the latter's county; and the purchaser confirmed the conversation by letter with conditions, which confirmation was received by the seller without objection. The court held that the contract was in writing.

In Grainger v. Gottlieb (Tex. Civ. App.) 234 S. W. 604, it was held that a written confirmation of an oral agreement, which was received and retained without objection, constituted a written contract, where it contained all the terms of the agreement.

In Pittman v. Robey (Tex. Civ. App.) 234 S. W. 1114, the terms of a telephone conversation were embodied in a letter of confirmation, both seller and purchaser having a copy and not objecting to anything therein. The court held this to be a contract in writing. Many cases to the same effect are cited by the foregoing authorities quoted from. Under such holdings, it is plain that the facts show a contract in writing to exist in the instant case.

[2] The place of performance next becomes the subject of inquiry. The statement of facts as well as the trial court's conclusions of fact discloses that by a long course of dealing appellant had sold coal to appellees under precisely the same conditions as in the present instance, except as to the substitution of one class of coal for another. Appellees had ordered coal of appellant frequently by postal card identical in terms with the one in evidence herein. Appellant had in every instance acknowledged such orders by confirmation in language identical with the confirmation in this case. On each occasion appellant had drawn a draft on appellees for the purchase price of the coal and had attached it to a bill of lading covering the shipment and sent them to Buda for payment. Both parties had full knowledge of the "usual conditions of sale." Apparently it was contemplated that appellees would pay the draft at Buda, upon its presentation at maturity by the bank there, and thus get possession of the bill of lading, and, by delivering it to the railway company, receive the coal. Until maturity Buda was undoubtedly the place of performance of every duty imposed on appellees by the terms of the contract. Yett v. Green, 39 Tex. Civ.

App. 184, 86 S. W. 787; Lammers v. Floyd, 11 Tex. Civ. App. 473, 33 S. W. 150; Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399; Callender v. Short, 34 Tex. Civ. App. 364, 78 S. W. 367; Gottlieb v. Dismukes, supra; Pittman v. Robey, supra.

But each contract provided that "all agreements for payment hereunder, if not met promptly at maturity, shall become payable in Dallas County, Texas." Payment of an obligation is performance of it.

Accordingly it is equally clear that, if the contract was not carried out at maturity, its performance thereafter was, by the express terms of the contract itself, to be in Dallas county. Traylor v. Blum (Tex. Sup.) 7 S. W. 829.

Therefore, if the original contract governs, the venue was properly laid in Dallas; but, if there was a novation of such contract, not embodying that feature dealing with performance, then the county court of Hays county has jurisdiction.

In 29 Cyc. 1130, novation is defined as:

"The substitution by mutual agreement of one debtor or of one creditor for another, whereby the old debt is extinguished, or the substitution of a new debt or obligation for an existing one, which is thereby extinguished. It is a mode of extinguishing one obligation by another. * * * In every novation there are four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of the new one."

A definition in effect the same is also found in Meador v. Rudolph (Tex. Civ. App.) 218 S. W. 521. In addition to the requisites of a novation, it is also tested by consistency and the intention of the parties. The former is set out in 6 R. C. L. § 307, as follows:

"A contract need not be rescinded by an express agreement to that effect. If the parties to a contract made a new and independent agreement concerning the same matter, and the terms of the latter are so inconsistent with those of the former that they cannot stand together, the latter may be construed to discharge the former. One contract is rescinded by another between the same parties when the latter is inconsistent with and renders impossible the performance of the former."

The latter is set out in Meador v. Rudolph, supra, and reads:

"Novation is effected by the substitution of a new obligation between the same parties with the intention to extinguish the old one."

Only acts, or conduct and circumstances clearly implying the substitution of a new contract for an old one will constitute novation. Applying the above definition and tests to the facts before us, we can find no substitution of a new contract for the one existing. There was a previous valid obligation. There was a meeting of the minds of the parties on its modification, and the validity of the subsequent condition is not questioned, but there was no express extinguishment of the old contract. Nor can we find in the facts anything showing even by implication a clear and positive intention on the part of either party to extinguish the old contract and to substitute an entirely new agreement therefor. The slight alterations made are altogether consistent with the terms of the existing contract. It is contended that there was a substitution of another agreement as to the time of shipment, the subject-matter of the contract, and the price.

Appellees' letters of August 25th and of September 16th, quoted herein, show clearly that time was not an essential feature of the contract, and that appellees, as well as appellant, considered the old contract still in effect when these letters were written. The references therein were all in regard to it, and the coal was shipped very soon after appellees' last letter was written.

The subject-matter of the contract remained the same. The contract specified three cars of coal. This was unchanged. The only alteration was in the quality of the coal, and this, by appellees' letter of September 16th, was to be changed only in the event appellant could not get cars in which to ship the nut coal. The price was unchanged. The order specified the list price at time of shipment, and this was the price charged.

In all other respects the contract remained as in the beginning. The quantity of coal to be shipped was still the same; the "usual conditions of sale" were still the same; the routing of the shipment was still over the International & Great Northern railroad; the place of performance was still in Buda until maturity, and in Dallas thereafter. No portion of any of the other five conditions set out in the face of the order underwent any modification whatever.

It is contended, as the case was tried by the court without a jury, that the facts found by such court are conclusive. It is true that the trial court's conclusions of fact are entitled to the same consideration and have the same effect as the findings of a jury, and that the appellate court will not ordinarily disturb such findings if they are supported by evidence. But in the present case the facts were undisputed and were as herein set out, and accordingly insufficient to base a finding that there had been a novation of the contract by the substitution of another and different kind of an agreement for the one previously existing. Therefore we find that no novation existed.

It is contended that the nature of this suit is such that it does not come within that clause of the contract relating to "agreement for payment" in that the suit

is brought for damages for failure to accept a shipment of coal and is not an action for the purchase price. But the petition specifically pleads the written contract, and particularly that portion relating to the "agreement for payment," and shows on its face that it is based on the obligation growing out of the promise to pay. This is so connected with and part of the transaction involved that in effect it is for the breach of the agreement to pay the purchase price of the coal, and the clause of the contract in question is consequently applicable.

[3, 4] We conclude that an offer, either oral or written, accepted in writing either with or without conditions, constitutes a contract in writing within the meaning of the venue statute, if such conditions are not objected to by the purchaser and are acted on by the seller; that a contract is performable, in part at least, in that county in which the draft, to which is attached a bill of lading covering a shipment, is presented for payment; that a contract payable at a particular place is performable at such place, and, if payable there after maturity, is performable exclusively from such time at that place; that a contract containing many provisions and conditions is not novated merely by the alteration of two of its minor provisions, all the others remaining unchanged; and that the petition in this case sets out a cause of action properly maintainable in Dallas within the purview of the venue statutes.

There was error in the trial court's holding that the facts and circumstances of the case constituted novation of the contract, and because of such its judgment is here reversed, and the cause remanded for trial on the merits in Dallas county.

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes