## NATIONAL BANK OF COMMERCE OF HOUSTON v. MOODY et al.
### No. 10190.

Court of Civil Appeals of Texas. Galveston.
Dec. 5, 1935.

Rehearing Denied Jan. 30, 1936.

Huggins, Kayser & Liddell, of Houston, (John Dawson, of Houston, of counsel), for appellant.

McDonald & Wayman, of Galveston, and Williams, Lee, Sears & Kennerly and Fred L. Williams, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This suit was brought by appellant against the appellees, W. L. Moody, Jr., a resident of Galveston county, and American National Insurance Company, a Texas corporation having its domicile in Galveston county, with an agency located in Harris county, and against Moody-Seagraves Company, a corporation, R. Wayne Lawler, receiver, and O. R. Seagraves, all residents of Harris county, and W. L. Moody, III, a resident of Galveston county.

The suit was primarily to recover upon obligations of the Moody-Seagraves Company, W. L. Moody, III, and O. R. Seagraves, which were among the assets of the Public National Bank of Houston transferred to appellant bank when it took over the assets of said Public National Bank for liquidation on October 27, 1931. A full list of all of these obligations is set out in plaintiff's petition. These obligations were

secured by various stocks and bonds pledged by the makers to the Public National Bank, and by repurchase agreement pursuant to the pledge agreement and contained in the notes given for the several obligations, and in an independent pledge agreement dated June 19, 1931, executed by said Moody-Seagraves, O. R. Seagraves, and W. L. Moody, III.

At the time of this suit, all of said securities, with the exception of 100 shares of the capital stock of City National Bank of Cleburne, 8,000 shares of the capital stock of Fire Protection Company of America, and 2,500 shares of the stock of Duvall-Texas Sulphur Company had been sold and the proceeds applied to said notes and obligation.

Appellant sought judgment for debt against Moody-Seagraves Company, O. R. Seagraves, and W. L. Moody, III, on said Moody-Seagraves Company note, and on said repurchase agreement, and also sought foreclosure of its lien on said Cleburne Bank, Fire Protection Company, and Duvall-Texas Company stocks. Personal judgment was not sought against W. L. Moody, III, on his $110,000 note, it being alleged that he was a bankrupt and a claim had been filed in his estate on the said note.

As against the appellee, W. L. Moody, Jr., appellant declared on a certain agreement evidenced by a telegram of date October 26, 1931, which appellant declared constituted a contract in writing by which said appellee had agreed to deliver to appellant at its banking house in Houston, Harris county, Tex., as additional security to all of the above obligations, 175 shares of the capital stock of American National Insurance Company, which stock, appellant alleged, was owned by W. L. Moody, Jr., at the time said telegram was sent and at all times since then.

After alleging the failure of appellee W. L. Moody, Jr., to deliver the stock of appellee insurance company, plaintiff prayed for recovery of the sum of $250,000 balance due on the obligations of Moody-Seagraves Company, and for foreclosure of an equitable lien on the 175 shares of stock of the insurance company agreed to be delivered to appellant by appellee, W. L. Moody, Jr., to secure said obligations, and, in the alternative, that if said stock should be found not available and subject to a foreclosure decree, that it have judgment against W. L. Moody, Jr., as damages for conversion in the sum of $175,000, the alleged value of the stock.

Appellant also prayed for an injunction against appellees, W. L. Moody, Jr., and American National Insurance Company, enjoining them from transferring or permitting to be transferred or otherwise disposed of the 175 shares of the American National Insurance Company stock belonging to appellee W. L. Moody, Jr., on which appellant claimed its equitable lien, and ordering said appellees to deliver into the registry of the court a certificate for the 175 shares of stock to be there impounded and held subject to the outcome of this suit.

A temporary injunction was issued on said application restraining said appellees from transferring or permitting to be transferred or disposed of said 175 shares of stock, and ordering said appellees to appear and show cause why the temporary injunction as prayed for in said petition should not be granted.

Appellees each filed pleas of privilege to be sued in Galveston county, and these were duly controverted by appellant. Appellees also filed an answer to said temporary restraining order and order to show cause.

Hearings on the temporary restraining order and order to show cause and on the pleas of privilege were by agreement held at the same time and before the court.

The trial court, from the evidence adduced on the hearing of the pleas of privilege, found, in substance, that the residence and domicile of the parties were as alleged in plaintiff's petition; that the telegram upon which appellant declared against W. L. Moody, Jr., did not constitute a contract in writing "obligating said appellee to perform an obligation in Harris County"; that the cause of action asserted by appellant against all of the other defendants on their obligations to appellant, and the cause of action asserted against appellee W. L. Moody, Jr., were separate, distinct, and severable, and that venue for the cause of action against W. L. Moody, Jr., did not lie in Harris county.

The court further found that appellant showed no cause of action against appellee insurance company, and no grounds for injunction against either of these defendants.

Upon these findings, judgment was rendered sustaining appellees' pleas of privilege, and ordering the case as to them

transferred to Galveston county. The judgment also dissolved the temporary restraining order theretofore issued against the defendants, and refused to grant the appellant's application for temporary injunction, "but without prejudice to the right of plaintiff, if any it has, to urge the same in the proper venue."

The court, at the request of appellant, made and filed conclusions of fact and law, which contain the following fact findings:

"On October 24, 1931, after banking hours, The Public National Bank and Trust Company of Houston (for convenience called Public National) was in financial difficulties. A meeting was called in the office of Jesse H. Jones, and was participated in by representatives of all the banks and trust companies of Houston, as well as certain business interests. It was decided, if possible, to prevent the closing of the said bank and attempt, for the benefit of the other banks, as well as of the depositors of the Public National, to save the situation. A tentative plan was considered for taking over and liquidating the Public National by the National Bank of Commerce, plaintiff herein.

"I find that the bankers and other interested persons stayed in almost continuous session from the evening of October 24, 1931, until the early morning hours of October 27; that it was first considered that the Public National had suffered a loss besides its capital structure of approximately $1,500,000.00. In reaching this figure, the notes and obligation hereinabove set out—called by the witnesses, 'Moody-Seagraves Line'—were not appraised because of lack of information with regard thereto.

"Early in the morning of the 26th of October, 1931, Carter Stewart, president of the Public National, called one A. A. Horn of Galveston, who was vice president of the City National Bank of Galveston, and requested him to get in touch with W. L. Moody, Jr., for the purpose of enlisting his aid in the situation. Jesse H. Jones also participated in this conversation, Mr. Horn declined to arouse Mr. Moody in the night but promised to communicate with Mr. Moody that morning." (The time of such conversation was shown to be about 3 o'clock in the morning of October 26, 1931.)

"I find that on Monday 26, 1931, about eight o'clock, and at the time indicated by the telegram, Jesse H. Jones received the following:

"'Galveston Texas 26 8 33 A 1931
"'Oct 26 A M 8 58
"'Jesse H. Jones Gulf Building Houston Texas
"'If you take over situation mentioned your phone request and if the following obligations quote W. L. Moody Third note hundred ten thousand dollars secured by fifty shares American National Insurance Company stock stop Seagraves note fifty thousand secured by two hundred eighty five shares Citizens State Bank stock Houston stop Moody Seagraves note seventy thousand stop Western Royalty Company note fifty thousand dollars stop Republic Gas Company bonds of par value one hundred fifty seven thousand and as additional security to all of above you hold one hundred seventeen thousand par value Republic Gas Company bonds and four hundred thousand dollars par value stock Fire Protection Company unquote, are not paid within six months I shall have the option of paying you the sum of three hundred fifty thousand dollars taking up notes and collateral enumerated above and if I do not exercise said option I will then deliver to you as additional security to said obligations one hundred seventy five shares of the capital stock of the American National Insurance Company of Galveston

"'W. L. Moody, Jr.'

"That after the receipt of the telegram above set out, Jesse H. Jones read it to one or more of the committees then present, and, upon the strength of same, the Moody-Seagraves Line was given a valuation, and with this and some other adjustments of assets, it was decided that an indemnity fund of $1,200,000 was necessary to underwrite the assets of the Public National. Such subscription was made and the plaintiff Bank (appellant) agreed to and did take over on October 27, 1931, the deposit and ledger liabilities of the Public National, and had transferred to it, first as collateral, and later absolutely, the assets of the Public National. The committee, additional subscribers to the fund and the plaintiff Bank (appellant) relied upon and acted in good faith on the telegram."

The court further found "that from the oral testimony heard on the trial, Jesse H. Jones (in his negotiations respecting the subject matter of this suit) was acting as Chairman of the Board of the National Bank of Commerce, but there is no proof that W. L. Moody, Jr., dealt with him in such capacity."

The undisputed evidence in the statement of facts brought up with the record shows that on October 23, 1931, Mr. Horn and Mr. Wayman, representing the City National Bank of Galveston, of which appellee W. L. Moody, Jr., was president, came to Houston and conferred with the officials of the Public National Bank. The cash reserves of the Public National Bank were getting low and there were heavy withdrawals by the depositors of the bank. The purpose of the visit of Mr. Horn and Mr. Wayman was to afford the bank assistance by taking over some of its assets at prices satisfactory to the City National Bank. As a result of this conference, the City National purchased some of the assets of the Public National for $100,000, which amount was paid to Public National. During this visit the officers of the Public National proposed a plan tentatively arranged through Mr. Jesse H. Jones for the Public National to liquidate through the National Bank of Commerce. The undisputed evidence further shows that all of the obligations and securities mentioned in the telegram from appellee Moody to Mr. Jones were the Moody-Seagraves obligations held by the Public National Bank, which, with other assets of that bank, were on October 27, 1931, when appellant bank took over the Public National Bank for liquidation, transferred from the vaults and files of the Public National Bank to the vaults and files of the appellant bank, and was there held after said transfer, as hereinafter shown.

It was shown that the notes and obligations above set out were not paid within six months by any of the defendants; that appellee W. L. Moody, Jr., did not elect to exercise the option contained in said telegram; and that he had refused to deliver to Jesse H. Jones or appellant any shares of stock of the American National Insurance Company.

In addition, it was shown that appellant bank, through its representatives, wrote appellee W. L. Moody, Jr., about said telegram and his obligation therein stated, and, on one occasion, a representative of appellant bank conferred with appellee W. L. Moody, Jr., in Galveston about the same, and that appellee at no time denied the sending of said telegram.

It was shown that it was the custom of banks to keep commercial paper constituting assets in the vaults and files of such banks.

It was further shown that the notes and obligations referred to in said telegram and to secure which said American National Insurance Company stock was to be delivered and pledged according to the telegram contained provisions respecting securities pledged thereto, empowering the holder of the obligations to sell the securities at public or private sale, in certain events to have said collateral transferred to a trustee, empowering the holder to transfer the obligations and deliver the collateral thereto to the transferee, and providing that all provisions contained therein should extend and apply to all new or additional collaterals pledged to secure the same.

It was further shown that all the notes referred to in the telegram were by their terms to be paid in Harris county.

Under an appropriate assignment and proposition, appellant first complains of the conclusion of the trial court that the agreement declared upon did not constitute a written contract on the part of W. L. Moody, Jr., to perform an obligation in Harris county.

 We agree with appellant that this legal conclusion cannot be construed as a holding by the court that the telegram declared on by appellant was not a written contract. A written agreement does not lose its force as a written contract because parol evidence is necessary to explain some of its terms, or relieve it of ambiguity so as to definitely show the intention of the parties to the agreement. The authorities supporting this general statement of the law are so numerous and unbroken as to render citation unnecessary. The authorities are also unanimous in holding that a telegram or any agreement reduced to writing and signed by one of the parties and accepted by the other is a written contract between the parties. But it is also held by the authorities that where a written contract contains no clue whatever from which the place of performance may be determined, parol evidence is inadmissible to fix the venue of a suit brought for breach of the contract. Hamic v. George S. Allison & Sons (Tex. Civ.App.) 247 S.W. 918.

Where, however, as in this case, the written instrument declared on does contain clues or recitals from which the place of performance can be definitely determined, parol evidence is admissible to fix the venue of a suit on the contract.

The telegram declared on in this case refers to a phone request made by Jesse H. Jones, and also refers to the acquisition by Jones of the Moody-Seagraves Line of obligations; these obligations and securities therefor are set out in detail in the telegram. When we consider these recitals, showing the knowledge of appellee Moody as to the notes and securities and the undisputed evidence showing his interest therein, his knowledge of the condition of the Public National, his previous efforts through his representatives, Horn and Wayman, to assist that bank by purchasing $100,000 of its securities, and the information imparted to his representative, Horn, over the telephone by Jones, the directing head of the appellant bank, and Stewart, the president of the Public National, we think the only reasonable inference from all the evidence is that appellee Moody knew when he sent the telegram of the tentative plan for the appellant bank to take over the assets of the Public National for liquidation, and also knew that the securities given for the notes and obligations of Moody-Seagraves were pledged to and held by the Public National in accordance with the terms of the notes and obligations for which they were pledged, as assets, and knew when he sent the telegram that if the appellant bank took the assets of the Public National for liquidation, as contemplated, these securities would be transferred to its vaults and held by it under the terms of the Moody-Seagraves notes and obligations. In the absence of any evidence to the contrary, we do not think reasonable minds can differ in this conclusion.

Appellee Moody neither by pleadings nor otherwise has denied his knowledge of the facts, and his silence gives much probative force to the evidence showing such knowledge on his part. The notes and all of the agreements constituting the Moody-Seagraves "line of obligations" mentioned in the telegram all showed that the securities given with the notes were pledged to the Public National, and were there kept to be sold and disposed of by the pledgee in accordance with the provisions of the notes and obligations.

These notes and obligations were transferred and delivered by the Public National to the appellant bank when it took over the assets of the former bank after the receipt of the telegram, as stated in the findings of the court before set out, and were there held undisposed of until the expiration of the six months' option requested by appellee's telegram.

■ Under this state of the evidence, it seems clear to us that when appellee agreed in the telegram to Jones, "if I do not exercise said option I will then deliver to you as additional security to said obligations one hundred seventy-five shares of the capital stock of the American National Insurance Company of Galveston," he agreed to deliver the insurance company stock mentioned to the appellant bank at Houston to be there held as additional pledged security in accordance with the terms of the Moody-Seagraves notes and obligations described in the telegram. The following case sustains this conclusion: County School Trustees v. Wagner (Tex.Civ.App.) 242 S.W. 532.

In the Wagner Case, as in the instant case, there was no express statement in the written contract of where the obligation was to be performed, but it was held that parol evidence was admissible to show the place of performance because portions of the written agreement indicated, as in this case, where delivery of the subject-matter of the contract was to be made, and the parol evidence admitted in that case, as in this, merely definitely fixed the place of delivery.

Other cases in point are Dickinson v. Carter (Tex.Civ.App.) 246 S.W. 739; Citizens' State Bank v. Commonwealth Bank & Trust Co. (Tex.Civ.App.) 268 S.W. 1008; Alexander v. Paschen (Tex.Civ.App.) 29 S.W.(2d) 430; Oliver v. Gallagher, 119 Tex. 178, 26 S.W.(2d) 903; Peacock Military College v. Scroggins (Tex.Civ.App.) 223 S.W. 232.

■ The agreement of appellee Moody expressed in the telegram declared that if the Moody-Seagraves line of obligations described in the telegram "are not paid within six months I will then deliver to you as additional security to said obligations 175 shares of the capital stock of the American National Insurance Company of Galveston," sufficiently identifies the obligations intended to be secured, the property intended as security, and clearly shows an intent to deliver the stock as security. Such written contract, therefore, shows all that is necessary to create an equitable lien in favor of appellant upon the insurance company stock, and the court, upon the pleadings and evidence shown in this record, could enforce such lien as between the parties. Houston National Exchange Bank v. Gregg

284

County et al. (Tex.Civ.App.) 202 S.W. 805; Atlanta National Bank v. Four States Grocer Co. (Tex.Civ.App.) 135 S.W. 1135; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; 49 C.J., p. 907; Pomeroy's Eq. Jur. (4th Ed.) vol. 3, § 1235, p. 2962.

The equitable lien so given by appellee Moody made him a surety on the Moody-Seagraves obligations to the extent of the value of the property so equitably pledged or mortgaged. This gave him all the rights and privileges of a surety, such as the right of subrogation to appellant's claim against the principal debtor and the right to have all prior security exhausted before his property could be held liable for the debts. Wofford v. Unger, 55 Tex. 480; Planters' & Mechanics' National Bank v. Robertson (Tex.Civ.App.) 86 S.W. 643.

In this situation he was a proper party to the suit by appellant on the Moody-Seagraves obligations.

We cannot agree with the learned trial judge that appellant's cause of action asserted against the other defendants in the suit and the cause of action asserted against appellee Moody were so separate and distinct as to require the separation of the two suits and the transfer of the suit against appellee Moody to the county of his residence. On the contrary, we think the two causes of action were so related to each other that they could only be properly tried together in a court having jurisdiction of the subject matter and of all of the parties interested therein. Cardwell et al. v. Masterson et al., 27 Tex.Civ.App. 591, 66 S.W. 1121; Cobb v. Barber, 92 Tex. 309, 47 S. W. 963; Hume v. Perry (Tex.Civ.App.) 136 S.W. 594.

Appellee Moody, in a brief filed in reply to the brief of appellant, has presented several propositions seeking to sustain the judgment of the trial court on the ground that it failed to show a prima facie cause of action against appellee Moody.

There are two answers to these propositions. The trial court found that appellant showed a cause of action against appellee Moody, but failed to show any cause of action against appellee insurance company. Appellee Moody made no complaint of this finding against him. Galveston, H. & S. A. Ry. Co. v. Reitz, 27 Tex.Civ.App. 411, 65 S.W. 1088; Bridgewater v. Hooks (Tex. Civ.App.) 159 S.W. 1004; Meisner v. Taylor, 56 Tex.Civ.App. 187, 120 S.W. 1014; First Nat. Bank v. Land & Improvement Co., 60 Tex.Civ.App. 315, 128 S.W. 436.

The record further shows that the case was not presented on the trial in the court below on the theory presented by appellee's proposition. Parties cannot on appeal present a question not raised on the trial, or assume as an afterthought an attitude inconsistent with that taken at the trial. Selkirk v. Selkirk (Tex.Civ.App.) 297 S.W. 578; 3 Tex.Jur. 169 and cases there cited; same authority, page 1005.

Our conclusions above expressed require that the judgment of the trial court sustaining appellee Moody's plea of privilege be reversed, and it has been so ordered. We further direct the trial court to overrule this plea, and, further, if appellant renews its application for temporary injunction, to hear and determine that question on its merits.

Reversed and remanded, with instructions.