CHARLES CAMPBELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 20484.   Promulgated September 29, 1950.

*Samuel Levisohn, Esq.*, for the petitioner.
*Pershing W. Burgard, Esq.*, for the respondent.

356

**OPINION.**

HILL, *Judge:* The petitioner rightfully claimed the deductions for the years 1942, 1943, and 1944 under section 23 (u)[1] of the Code if the annual payments to his former wife, Beulah, are within the purview of section 22 (k) [2] of the Code. The respondent's claim that they are not is twofold: (a) the informal correspondence between petitioner

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

[2] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husbands. \* \* \*

and Beulah described and set forth in our findings does not constitute a "written instrument" within the meaning of section 22 (k), and (b) assuming *arguendo* that such correspondence is a written instrument under that provision of the Code, still the payments were not made in discharge of a legal obligation incurred under a written instrument. The petitioner maintains that both of those arguments are baseless.

We believe that under the rationale of *Floyd W. Jefferson*, 13 T. C. 1092, the respondent must fail as to his contention (a). In that case the taxpayer was married in 1904. In 1938 his wife became ill and was confined to various private sanitariums. In 1941 the taxpayer discussed the subject of divorce with his wife. On May 20, 1941, he wrote her a letter offering her periodic payments. She accepted his offer. On July 23, 1941, the taxpayer obtained a Nevada divorce from his wife. He deducted the payments provided for her in the letter of May 20, 1941, from his income for the year there involved. The respondent disallowed such deductions maintaining in part that the letter of May 20 did not constitute a "written instrument" within the intendment of section 22 (k), *supra*. The Court, in sustaining the taxpayer's contention that the letter constituted a "written instrument" within the meaning of section 22 (k), stated as follows:

> The evidence justifies the inference that the letter of May 20, embodied the terms of a prior oral agreement or understanding between petitioner and his wife with reference to periodic payments to be made for the wife's support and maintenance, and that the letter confirmed that oral agreement or understanding. While it is not shown that there was a written acceptance of the terms of the letter by Violet, it is shown that these terms were otherwise accepted by her and prior to the entry of the divorce decree. Petitioner contends that when Violet thus accepted those terms a rule of law set out in certain cited authorities became applicable and that thereunder the terms of the letter with reference to the support and maintenance of the wife became a written contract between them and, therefore, a "written instrument" within the intendment of section 22 (k). The most pertinent authorities cited by petitioner are: *National Bank of Commerce of Houston* v. *Moody*, 90 S. W. (2d) 279, wherein it is stated at page 282: "The authorities are also unanimous in holding that a telegram or any agreement reduced to writing and signed by one of the parties and accepted by the other is a written contract between the parties"; and *Ferguson* v. *Parker*, 176 S. W. (2d) 768, wherein it is stated, at page 770: "The doctrine is well settled that an instrument purporting to set forth the mutual obligations of the parties * * * signed and performed by one of the parties and acquiesced in by the other, is to be regarded as a written contract. See 17 C. J. S., Contracts, p. 409, § 59 * * *." We agree with the contention of petitioner that the terms of the letter of May 20 with reference to the support and maintenance of Violet constituted a "written instrument" within the intendment of section 22 (k), *supra*.

In the case at bar there was a writing signed by the petitioner and accepted by Beulah and we therefore hold in accordance with *Floyd W. Jefferson*, *supra*, that the letter of December 14, 1936, constituted a "written instrument" within the meaning of section 22 (k).

With respect to respondent's contention (b), he states as follows on brief:

* * * A separation agreement is governed by the law of residence of the parties, at least if such residence is not for the purpose of evading the law of the domicile. *Frothingham* v. *Anthony*, (1934) 69 Fed. (2d) 596, *certiorari denied* (1934) 292 U. S. 655. It has also been held that separation agreements are governed by the law of the domicile. *Coe* v. *Hill*, (1909) 201 Mass. 15, 86 N. E. 949. Since it is apparent from the letter of December 14, 1936 from the petitioner to his wife that she went to Florida for the express purpose of getting a divorce, the instant agreement is governed by the law of New York. Furthermore, since it conclusively appears from that letter that Mrs. Campbell went to Florida at the request of the petitioner, the agreement which they entered into inducing Mrs. Campbell to obtain the divorce is void in New York, which is the domicile of the parties. *In re Hellwig's Estate* (1942) 34 N. Y. S. (2d) 876; *Kennedy* v. *Kennedy*, (1944) 51 N. Y. S. (2d) 713. No action is necessary in New York to set aside a void agreement. It is as though there were no agreement in being upon which the party may bring a successful action. *Dworkin* v. *Dworkin*, (1936) 286 N. Y. S. 982. The petitioner has not therefore incurred a "legal obligation" under a "written instrument" and the "written instrument" is non-existent.

We assume that respondent's argument that the agreement is void is based on the premise that it had a direct tendency toward dissolving the marriage and is therefore violative of public policy and section 51 of New York Domestic Relations Law. See *Butler* v. *Marcus*, 264 N. Y. 519, 191 N. E. 544.

We do not agree with respondent's contention. He errs first of all in his interpretation of section 22 (k). Congress was not directing its attention to a legal obligation under a written instrument in enacting that section of the Code, but to a legal obligation which arises out of the marital or family relationship. In H. Rept., No. 2333, 77th Cong., 2d Sess., page 72, it is stated:

* * * This section applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree. * * *

In S. Rept. No. 1631, 77th Cong., 2d Sess., page 83, there is similar language. The instrument here involved embodied the discharge of a legal obligation which arose out of the family or marital relationship and for that reason is one intended by section 22 (k) of the Code.

Our conclusion that the respondent has incorrectly read section 22 (k) is further supported by the language of that section. Congress provided, among other things, that before payments of the nature here being considered could be deducted, they must be incurred "* * * under a written instrument incident to such divorce * * *". It could be argued that all instruments incident to a divorce have as their purpose the severance of marriages. The written instruments involved in *Robert Wood Johnson*, 10 T. C. 647, and *George T. Brady*,

10 T. C. 1192, both of which involved the question of whether such instruments were incident to divorce, clearly were based on the promise of the taxpayers' wives to obtain divorces. In both cases, however, we sustained the taxpayers' contention that the payments were deductible.

There is still another reason for our belief that the respondent has misinterpreted section 22 (k). In H. Rept. No. 2333, *supra*, it is stated that:

* * * These amendments are intended to treat such payments as income to the spouse actually receiving or actually entitled to receive them and to relieve the other spouse from the tax burden upon whatever part of the amount of such payments is under the present law includible in his gross income. *In addition, the amended sections will produce uniformity in the treatment of amounts paid in the nature of or in lieu of alimony regardless of variance in the laws of different States concerning the existence and continuance of an obligation to pay alimony.* [Emphasis added.]

We believe that to sustain respondent's contention in this instance would do much to violate the expressed purpose of producing uniformity in the tax treatments of amounts paid regardless of variance of laws among the states. There could well be some variance among the states under their respective codes and the law of decided cases concerning the interpretation of written instruments such as the one here in question. For example, in *Commissioner* v. *Hyde*, 82 Fed. (2d) 174, the Court pointed out in discussing section 51 of the New York Domestic Relations Law that

* * * the line is not easily drawn between such illegal contracts and valid agreements made while the parties are separated, which contemplate a divorce but are not shown to be an actual inducement to severing the marital relation. * * *

In addition, upon the basis of the following quotation from that same case we do not think the written instrument here is void. Hence, the respondent must fail in respect of contention (b) even if we have misread section 22 (k). The Court said:

* * * This [the fact that the line between valid and void instruments is not easily drawn] is well illustrated by the recent decision in Butler v. Marcus, 264 N. Y. 519, 191 N. E. 544. In that case the husband and wife, while living apart, entered into an agreement wherein provision was made for the wife's support. It contained the condition that if the parties were still married a year later, the contract should no longer be binding; but if either should have obtained a divorce, its provisions were to continue in effect. After obtaining a divorce in Nevada the wife brought suit to enforce payment under the contract. The defendant set up in defense that when the contract was made no action for divorce or separation was pending, and that the contract was contingent upon severance of the marriage and hence void. This answer was stricken and summary judgment awarded the plaintiff. The judgment was affirmed without opinion in 239 App. Div. 912, 265 N. Y. S. 951, two judges dissenting on the ground that Schley v. Andrews, supra, required reversal of the judgment and dismissal of the com-

plaint. Despite the dissent, the Court of Appeals affirmed without opinion. In the case at bar the agreement recited that the spouses were already separated and the wife was about to institute an action for divorce. We should hesitate to hold, in the absence of controlling authority, that an agreement, made under such circumstances, limiting the divorce action which the wife intended to bring to a specific tribunal and to the allegation of a single specified ground and providing for a settlement of the property and personal rights of the parties in anticipation of such a divorce, contravened the public policy of New York or violated section 51 of the Domestic Relations Law. The cases do not appear to require such a holding. Compare Clark's Trustee v. Fosdick, 118 N. Y. 7, 22 N. E. 1111, 6 L. R. A. 132, 16 Am. St. Rep. 733; Butler v. Marcus, 264 N. Y. 519, 191 N. E. 544.

It will be noted that the spouses here were already separated at the time the agreement was entered into. Moreover, petitioner stated in the letter that it was his desire to solve their difficulties amicably by arranging the settlement with his wife as regards finance "before the divorce is sought", and nowhere in that letter does he state that he would not make these payments unless she obtained a divorce. Indeed, part of the settlement which he offered her was to pay her $4,800 a year which she was already receiving from him. Under these circumstances, we shall not hold that the agreement in question contravened the public policy of New York.

It follows that respondent erred in his determination.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, concurs only in the result.