ARTHUR Z. GORDON AND THERESA GORDON, PETITIONERS *v.* COMMISSIONER ·OF INTERNAL REVENUE, RESPONDENT

Docket No. 1637–76.     Filed July 11, 1978.

*Alan L. Reische* and *Claudia C. Damon,* for the petitioners.
*John O. Tannenbaum,* for the respondent.

OPINION

RAUM, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes as follows:

| Year | Amount |
| --- | --- |
| 1971 | $3,899.78 |
| 1972 | 3,915.68 |
| 1973 | 8,447.30 |

The only issue is whether payments made pursuant to a divorce decree constituted alimony deductible under section 215(a)[1] or were nondeductible payments for the support of minor children. All of the facts have been stipulated.

Petitioners Arthur Z. Gordon and Theresa Gordon are married individuals who resided in Laconia, N. H., at the time the petition in this case was filed. They filed their joint 1971, 1972, and 1973 Federal income tax returns with the Internal Revenue Service Center, Andover, Mass.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended.

Petitioner Arthur Z. Gordon (hereinafter referred to as the petitioner) was formerly married to Evelyn Gordon, now known as Evelyn Ackerman. Petitioner and Evelyn resided in Laconia, N. H., from the time of their marriage in 1952 to 1967. They had three children who, during the taxable years in question, were either minors or full-time students.

During early 1966, petitioner and Evelyn experienced marital difficulties, and negotiations ensued between their attorneys concerning a settlement of their rights. On March 13, 1967, a final "stipulation" was executed by the petitioner and Evelyn and their respective counsel. On April 4, 1967, this stipulation was incorporated in a decree of divorce of the Superior Court, Belknap County, N. H. (hereinafter original decree).

Under the terms of the original decree and stipulation, petitioner was obligated to pay alimony and child support in a fixed amount of $130 per week, of which $55 was allocated to alimony (fixed alimony) and $75 to child support at the rate of $25 per child while a minor or full-time student (fixed child support). The original decree and stipulation imposed a further obligation (variable child support obligation) on petitioner in the following terms:

The libelee [petitioner] shall pay to the libelant [Evelyn Ackerman] for the support of any minor child or children a sum equal to fifty percent of any increase in earnings after taxes over gross earnings of $14,500.00 per year. The term "earnings" shall mean cash or property income from any source whatsoever. * * * Additional support over gross earnings shall be apportioned among children and shall continue while each child is a minor or full time student.

During the years 1971, 1972, and 1973, petitioner made payments to Evelyn for fixed alimony, payments to Evelyn for purposes of fixed child support, and total current payments to Evelyn, as required by the original decree and stipulation, as follows:

|  | 1971 | 1972 | 1973 |
|---|---|---|---|
| Fixed alimony | $2,860 | $2,860 | $2,860 |
| Fixed child support | 3,900 | 3,900 | 3,900 |
| Total payments[2] | 15,170 | 15,820 | 24,156 |

---

[2] The "total payments" shown above were stipulated by the parties without further explanation, and presumably include payments for variable child support. However, it should be noted that the figures in the above table do not correlate precisely with the amounts, *infra* p. 528, claimed by petitioner as deductions.

In 1973, a dispute arose between petitioner and Evelyn concerning the application of the original decree and stipulation. In 1974 and 1975, petitioner and his former wife filed various civil actions in New Hampshire State and Federal courts relating to the obligations imposed by the original decree and stipulation. One of the claims made by petitioner in these suits, either by way of affirmative defense to Evelyn's claims, or as grounds for relief in his own suit, was that the variable child support obligation was invalid under New Hampshire State law because the amount of the child support bore no reasonable correlation to the needs of the children. Petitioner made no allegations that amounts paid under the variable child support obligation were ever intended to be alimony and not child support, or that petitioner and Evelyn had ever agreed to change the character of the variable child support payments to alimony. Among the forms of relief sought in these suits by petitioner was cancellation of future liability under the variable child support obligation. Evelyn, on her part, made claims against petitioner for arrearages and sought to participate in the proceeds of certain property which petitioner had disposed of since the 1967 original decree.[3]

Two actions, one instituted by petitioner and the other by Evelyn in the Superior Court, Belknap County, N. H., were consolidated for trial and came up for hearing on June 6, 1977. After discussions among the parties, their counsel, and the court, an agreement was reached and a Consent Decree was approved by the court as being in conformity with the laws of the State of New Hampshire. Among other things, the 1977 Consent Decree required petitioner to pay Evelyn $45,000 in cash "as child support," and stated further that "Taking into account the payments to be made hereunder, and those contributed from all other sources, the parties agree and the Court rules that the reasonable needs of the children have been met to date." In addition to other provisions relating to petitioner's responsibilities for college education of the two younger children (who were then 17 and 20 years old, respectively), and for health and life insurance for the benefit of the children, the Consent Decree provided:

---

[3]Petitioner's 1973 income tax return indicates the receipt of securities in a nontaxable exchange having a value "not greater than $791,416."

4. It is determined that amounts paid by Mr. Gordon to Mrs. Ackerman, in the following years and amounts, constitute additional alimony above the basic obligation, and not child support, because they were so agreed to by the parties and because the formula of the original Stipulation under which they were computed was not correlated to the reasonable needs of the children:

        A. 1969 ......................... $1,865
        B. 1970 ......................... $4,570
        C. 1971 ......................... $8,505
        D. 1972 ......................... $8,440
        E. 1973 ...................... $16,065

Finally, the Consent Decree stated that, except as specifically provided therein, "all other provisions of the original Stipulation and Decree are hereby vacated, as of the effective date hereof," particularly to the extent that Evelyn, individually or in behalf of the children, might have any claim to any property owned or acquired by petitioner.

For the taxable years 1968 through 1973, petitioner claimed alimony deductions, under I.R.C. section 215, and Evelyn Ackerman reported alimony income as follows:

| Year | Amount claimed by petitioner as a deduction | Amount reported by Evelyn Ackerman as income |
|------|---------------------------------------------|----------------------------------------------|
| 1968 | $2,860 | 0 |
| 1969 | 4,725 | $4,725 |
| 1970 | 7,430 | 7,430 |
| 1971 | 11,365 | 11,365 |
| 1972 | 11,300 | 11,300 |
| 1973 | 18,925 | 0 |

The Commissioner disallowed all of petitioner's alimony deductions for 1971, 1972, and 1973 in excess of $2,860, the amount called for in the original decree as fixed alimony, on the ground that the disallowed amounts were not alimony payments but represented nondeductible child support payments.

The controversy in this case revolves around the character of the payments petitioner made to Evelyn Ackerman under the variable child support obligation in the original decree and stipulation.

Petitioner's first claim is that sometime after the entry of the original decree petitioner and Evelyn Ackerman orally modified the variable child support obligation to make future payments thereunder alimony, deductible by petitioner under sections

71(a) and 215. This alleged agreement is supposedly evidenced by the consistent treatment of the payments as alimony on petitioner's and Evelyn's respective tax returns, which, according to petitioner, are written instruments incident to the divorce sufficient to satisfy the requirements of section 71(a). We do not agree.

In order for alimony payments to be deductible under sections 71(a) and 215, the obligation to pay alimony must be incurred or imposed under a written instrument or a decree incident to a divorce, not by an oral agreement.[4] In this case, the tax returns are not the instruments which imposed the legal obligation to pay alimony, but are at best only evidence of an oral agreement to pay alimony. Cf. *Segal v. Commissioner*, 36 T.C. 148, 154. Mere written evidence of an oral agreement does not fulfill the statutory requirement of a written instrument imposing the alimony obligation. See *Blanchard v. United States*, 424 F. Supp. 916, 919 (D. Md.). *Campbell v. Commissioner*, 15 T.C. 355, cited by petitioner, is distinguishable.[5] In *Campbell*, a letter embodying an offer to pay alimony, signed by the husband and accepted by the wife, was held to be a sufficient "written instrument" on the ground that a written offer signed by one party and accepted by the other formed a written contract under contract law. See also *Jefferson v. Commissioner*, 13 T.C. 1092. However, the tax returns could not form the basis for a written contract under the rationale of *Campbell*. Petitioner's tax returns did not contain an offer to Evelyn that could be accepted by her, and there is no evidence in the record that Evelyn ever saw petitioner's tax returns so that she could agree to be bound by his characterization of the payments as alimony. Furthermore, it should be noted that Evelyn did not report her receipts from petitioner as alimony income in 1968 and 1973. Her inconsistent treatment in this respect thus weakens the basis for petitioner's contention in any event, and it was precisely such uncertainty concerning the existence and terms of an agreement that the

---

[4]Cf. *Smith v. Commissioner*, 26 T.C.M. 443, 36 P–H Memo. T.C. par. 67,090; *Keebler v. Commissioner*, 28 T.C.M. 1042, 38 P–H Memo. T.C. par. 69,198.

[5]Petitioner also cites *De Wailly v. Commissioner*, 35 T.C.M. 321, 45 P–H Memo. T.C. par. 76,071, appeal dismissed (5th Cir.), but that case is inapposite since in that case there was a written agreement to pay alimony, and the only question was whether a judicial decree approving the agreement was incident to the divorce. Here, the existence of a written agreement to modify the original decree is at issue.

statutory requirement of a writing sought to avoid. Compare *Prince v. Commissioner*, 66 T.C. 1058, 1067.

The fact that the alleged agreement between petitioner and Evelyn was acknowledged in the Consent Decree does not change our result. The Consent Decree does not determine that the agreement was entered into before the payments were made and not sometime after the fact. Even if it did, retroactive judicial determinations cannot cure defects in alimony arrangements under the Federal taxing statute, such as the absence of a written instrument at the time the payments were made. Cf. *Van Vlaanderen v. Commissioner*, 10 T.C. 706, affirmed 175 F.2d 389 (3d Cir.); *Blanchard v. United States*, 424 F. Supp. at 919.

Petitioner's second argument is that the Consent Decree judicially determined the payments in excess of the fixed alimony obligation to be alimony and not child support due to the invalidity of the variable child support obligation under State law. Petitioner bases this argument on N.H. Rev. Stat. Ann. sec. 458:17 (Supp. 1975)[6] which authorizes a divorce court to make a "reasonable provision" for child support, and on the statement in the Consent Decree that the variable child support obligation formula was not "correlated to the reasonable needs of the children." We decline to give the Consent Decree the retroactive effect petitioner desires.

State court adjudications retroactively redesignating divorce-related payments as alimony and not child support (or vice versa) are generally disregarded for Federal income tax purposes if the order retroactively changes the rights of the parties or the legal status of the payments. See, e.g., *Turkoglu v. Commissioner*, 36 T.C. 552, 555; *Segal v. Commissioner*, 36 T.C. 148, 153; *Daine v. Commissioner*, 9 T.C. 47, affirmed 168 F.2d 449 (2d Cir.). An exception to this rule is made when a retroactive judgment corrects a divorce decree that mistakenly failed to reflect the true intention of the court at the time the decree was rendered. See *Newman v. Commissioner*, 68 T.C. 494, and cases cited therein. Petitioner admits on brief that this

---

[6]N.H. Rev. Stat. Ann. sec. 458:17 (Supp. 1975) states:

458:17 Support of Children. In all cases where there shall be a decree of divorce or nullity, the court shall make such further decree in relation to the support, education, and custody of the children as shall be most conducive to their benefit, and may order a reasonable provision for their support and education. * * *

exception is inapplicable because no such mistake of fact was made by the divorce court. Accordingly, the general rule applies, and under that rule petitioner must show that the Consent Decree did not retroactively alter the status of the payments. Such would be the case if, by operation of State law, payments under an invalid child support obligation were treated as obligations to pay alimony, and if the variable child support obligation in fact were invalid.

We are not conclusively bound for Federal tax purposes by a decision of an inferior State court on a point of State law when there is no controlling decision by the highest State court. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 467. We have located no such controlling decision, and accordingly we must make our own determination of State law, giving "proper regard" to the ruling of the State Court. *Commissioner v. Estate of Bosch, supra.* Applying the rule of *Bosch*, and giving some weight to the facts that the Consent Decree herein was entered without normal adversary safeguards and contained no reasoned elaboration of State law, we conclude that the Consent Decree is erroneous if it determined that the variable child support obligation was invalid as child support and therefore legally equivalent to an obligation to pay additional alimony.

First, petitioner has failed to cite, and we have not found, any New Hampshire authority suggesting that invalid and unreasonably excessive child support payments are transmuted into alimony instead of becoming subject to cancellation or abatement. In fact, petitioner sought cancellation of future liability in the litigation against Evelyn Ackerman that led to the Consent Decree. Furthermore, obligations for child support and alimony are imposed under the authority of separate statutory provisions (N.H. Rev. Stat. Ann. sec. 458:17, *supra,* and N.H. Rev. Stat. Ann. sec. 458:19 (1968))[7] and those provisions do not make the amounts awarded under one section dependent upon the amount awarded under the other. Thus, there is no statutory basis for petitioner's argument. Finally, a supporting parent may maintain an action to reduce child support payments found to be

---

[7]N.H. Rev. Stat. Ann. sec. 458:19 (1968) states:

458:19 Alimony. Upon a decree of nullity or divorce, the court may restore to the wife all or any part of her estate, and may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just * * *

532

excessive. See, e.g., *Collette v. Collette,* 108 N.H. 469, 238 A.2d 598; *Fortuna v. Fortuna,* 103 N.H. 547, 176 A.2d 708. Such an action would be a futile gesture if the "excessive" portion of child support were canceled, only to be added back in the form of increased alimony payments. We conclude that invalid child support payments are not automatically transformed into alimony under State law, but are canceled or abated, unless the parties agree to different treatment and the State court approves the agreement.[8]

We are also unconvinced that the variable child support obligation was invalid under State law. Petitioner's main ground of attack is that the variable formula set no limits on the amounts payable, and that payments greatly in excess of (or far smaller than) the reasonable needs of the children could be required.[9] However, there are no minimum or maximum standards for an award of child support in New Hampshire, or for the amount of income a supporting parent may retain. See, e.g., *Fortuna v. Fortuna,* 103 N.H. 547, 176 A.2d 708. The needs of the parties, as well as a supporting parent's ability to pay are factors to be considered by the divorce court when setting amounts for child support. See *Fortuna v. Fortuna, supra.* The divorce court is accorded wide discretion in this regard, and "its decision will not be set aside unless 'the evidence demonstrates clearly an abuse' of such discretion." *Mangin v. Mangin,* 115 N.H. 489, 343 A.2d 636. Under this standard, there were inadequate grounds for setting aside the variable child support obligation on the ground of invalidity. The Consent Decree does not purport to be based on any "evidence" other than the agreement of the parties, nor does it contain a finding that the divorce court abused its discretion in ordering the variable child support obligation in the first instance. Furthermore, it is New Hampshire policy to eschew rigid minimum and maximum standards for child support orders in favor of allowing the

---

[8]If the parties do so agree, the agreement must be reduced to a writing or decree incident to the divorce before payments commence in order to qualify the payments as deductible alimony under secs. 71(a) and 215. See pp. 529-530 *supra.*

[9]Petitioner has brought to our attention only one New Hampshire case in which child support was challenged as being beyond the reasonable needs of the children, but the court in that case rejected the argument. See *Kennard v. Kennard,* 81 N.H. 509, 129 A. 725, 728.

It is appropriate to note that the original decree and stipulation did require fixed minimum child support payments, thus to some extent protecting the children against unreasonably small child support awards.

divorce court to consider all the relevant facts on a case by case basis, see, e.g., *Comer v. Comer*, 110 N.H. 505, 272 A.2d 586, 587. In the absence of evidence that current or foreseeable future payments are in fact unreasonable, we think that the New Hampshire Supreme Court would not invalidate a child support formula based on the father's income merely because of the possibility that unforeseen increases in income could make the payments excessive. This is especially true since the father would have the right to seek prospective modification of the original decree at any time the payments actually became unreasonably large. See *Fortuna v. Fortuna*, 176 A.2d at 709.

We conclude that the variable child support payments were not alimony by operation of New Hampshire law. Because we hesitate to ascribe an action to the New Hampshire divorce court violative of State law, see *Brown v. Commissioner*, 50 T.C. 865, 869, affirmed per curiam 415 F.2d 310 (4th Cir.), we find as a fact that the Consent Decree was intended to be no more than a judicial ratification of an agreement between petitioner and Evelyn Ackerman in settlement of their litigation.[10] We understand the statement concerning the reasonable needs of the children to be merely declarative of the general concerns of the parties in making their agreement, and not as a ruling of invalidity under State law. Since the variable child support obligation was valid, it follows that the Consent Decree retroactively altered the rights of the parties and changed the status of the payments from child support to alimony. The Consent Decree should therefore not be given retroactive effect for tax purposes, and we so hold. *Turkoglu v. Commissioner*, 36 T.C. at 555.

Petitioner's final argument is that due to the invalidity of some or all of the variable child support payments, all of his payments to Evelyn Ackerman were deductible as alimony because no definite amount was "fixed" as child support within the meaning of *Commissioner v. Lester*, 366 U.S. 299. We need not reach the merits of this argument, as we have concluded that the child support obligation was valid and that the Consent Decree did not find otherwise. Accordingly, petitioner is not

---

[10]The fact that the Consent Decree was entered upon the consent of the parties distinguishes this case from *McGrady v. Mahon*, 117 N.H. 430, 378 A.2d 1143, which held that a court cannot nullify past child support payments against the will of the recipient parent because they are "vested property rights."

entitled to alimony deductions greater than those allowed by the Commissioner.

*Decision will be entered for the respondent.*

