MAURICE FIXLER AND ANNE S. FIXLER, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55189, 57528. Filed March 29, 1956.

*Charles H. Watson, Esq.*, and *Harry I. Grossman, Esq.*, for the petitioners.

*Joseph C. Crawford, Esq.*, for the respondent.

**OPINION.**

TIETJENS, *Judge:* Pointing to the words of sections 22 (k) and 23 (u) which provide for a deduction by the husband if he makes payments to his divorced wife—

in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband * * * under a written instrument incident to such divorce or separation,

the Commissioner contends that two of the conditions precedent to the deductions here claimed are lacking, i. e., (1) that there was no legal obligation on the husband and (2) that the written agreement was not incident to divorce.

With reference to the first argument we think the husband was under a legal obligation to make the payments. The oral agreement was made before the divorce and so at a time when Maurice was still

under an obligation pursuant to Illinois law to provide for his wife's support and maintenance. Ill. Rev. Stat. (Smith-Hurd, 1953) ch. 68, sec. 52.

It is not questioned that such was the purpose of the arrangement. The Illinois law is settled that agreements of this kind are valid and survive divorce even though the grounds for the decree are the faults of the wife. *In re Moser*, 145 F. 2d 523 (C. A. 7) and cases therein cited.

The troublesome problem is whether the agreement pursuant to which the payments were made is a "written instrument incident" to divorce. On this point the Commissioner stresses that the divorce occurred in April 1940 and that the written agreement was not made until April 1945 and from this would have us conclude that it was not "incident" to the divorce within the meaning of the statute. Had the agreement between Maurice and Ethyl been reduced to writing in the first place, or had the writing of April 5, 1945, been an amendment of a prior written agreement incident to divorce, even though the amendment was executed years after the divorce, we would have no difficulty, for the courts have decided that payments made by the husband under such agreements are either deductible by him or taxable to the wife. *Newton* v. *Pedrick*, 212 F. 2d 357 (C. A. 2) (an amendatory agreement some 6 years post-divorce providing for payments "in addition" to amounts already payable); *Rowena S. Barnum*, 19 T. C. 401 (an agreement 19 years after divorce settling disputes in respect of previous agreements); *Antoinette L. Holahan*, 21 T. C. 451 (a change in an agreement originally incident to divorce made 20 years thereafter).

The case involving a factual situation nearest to that before us is *Thomas E. Hogg*, 13 T. C. 361, cited by both parties. There a divorce was granted on May 15, 1939. The decree made no reference to alimony. On May 17, 1939, the parties entered into a written agreement with respect to alimony pursuant to a prior oral agreement. This Court held that the payments under the written agreement were deductible, saying that the—

payments were made pursuant to an enforceable agreement; that the agreement's terms were fully understood before the wife petitioned for divorce, and were incorporated in written contracts or deeds immediately after the decree was granted.

The Commissioner lays hold on the word "immediately" as indicating that the agreement must be near in point of time to the decree in order for it to fulfill the requirements of the statute. While the short lapse of time perhaps made the *Hogg* case easier of decision we do not think it was the controlling consideration. We think what was controlling was the existence of an enforceable obligation with reference to alimony at the time of the divorce which was later reduced to

writing. And that is precisely the situation before us. Cf. *Frank J. DuBane*, 10 T. C. 992, where, though holding for other reasons that the payments were not deductible, it was indicated that an oral agreement entered into prior to divorce which was later reduced to writing could be "incident" to divorce.

The Commissioner also cites *Benjamin B. Cox*, 10 T. C. 955, affd. 176 F. 2d 226 (C. A. 3), as militating against a holding here that a written agreement entered into some years after a divorce can be "incident" to the divorce. But the *Cox* case is easily distinguishable from this case because there there was no subsisting oral agreement at the time of divorce which was later put in written form.

We hold that the payments here in question were made under a written agreement incident to divorce and were therefore deductible. Maurice was under a legal obligation to support his wife at the time the oral agreement referred to in our findings was made, that agreement was enforceable by Ethyl at the time of and after the divorce, and all the written agreement accomplished was to reduce the obligation orally undertaken to writing. There is no question in our mind but that the oral agreement was incident to divorce and we think that in the circumstances the written agreement must also be held to be incident to divorce.

In passing we point out that the oral agreement was made and the divorce was granted prior to enactment of sections 22 (k) and 23 (u) and that the agreement was reduced to writing after their enactment. There is no indication in the record of any connection between the Code changes and the fact that the agreement was thereafter put in writing. No deductions are claimed for payments made under the oral agreement.

We also quote as apposite the statement of the Court of Appeals for the Second Circuit in *Lerner* v. *Commissioner*, 195 F. 2d 296, 298, reversing 15 T. C. 379:

The term "written instrument incident to such divorce" was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred, and not to deny relief to the husband when merely legal formalities have not been rendered their full due.

On the record before us we have no question but that the existence of the obligation when the divorce occurred has been fully proved.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

---

HARRON, *J.*, dissenting: In order to have a deduction under section 23 (u) for periodic payments to a divorced wife, the periodic payments must meet all of the conditions prescribed in section 22 (k). One of the conditions prescribed in section 22 (k) is that the payments made

by the former husband must be in discharge of a legal obligation which is incurred by the husband, *because of the marital or family relationship*, under a written instrument incident to the divorce. In these proceedings, the periodic payments which are involved were made during the years 1949–1952, after a divorce was granted to the husband, Maurice Fixler.

The narrow question for decision, I believe, is whether the periodic payments in question discharged a legal obligation of Fixler incurred by him because of the marital relationship. If the legal obligation so discharged, assuming *arguendo* that Fixler had a legal obligation, was *not* incurred because of the marital relationship, then the decision must be that the periodic payments do not come within section 22 (k) and the correlative section 23 (u). It is on this point that I dissent from the majority view, and the reasons, as I see them, are as follows:

Maurice, the husband, was granted an absolute divorce in 1940 by an Illinois court, on the ground that Ethyl, the wife, had committed adultery. The husband was the injured party; the wife was at fault. In this situation, perhaps the Illinois court could have exercised its equity power to award the wife alimony if the circumstances justified such action, even though it is the general rule in Illinois that a wife is not entitled to alimony where a divorce is granted to the husband for the wife's fault. See *Rybakowicz* v. *Rybakowicz*, 290 Ill. 550, 125 N. E. 370; *Boylan* v. *Boylan*, 349 Ill. 471, 182 N. E. 614; and *Spitler* v. *Spitler*, 108 Ill. 120; *Adler* v. *Adler*, 26 N. E. 504, 508. Or perhaps the Illinois court could have said nothing in its decree about alimony, or the wife's right thereto. But the Illinois court dealt with the matter in its decree. The court determined and decreed that Ethyl forfeit and be barred of dower, homestead, alimony, and other property rights *by reason of her marriage*. Under the court's decree, there could not be any further legal obligation upon Maurice after the divorce to make any payments to Ethyl in discharge of an obligation which arose because of the marital relationship, or because of a right which accrued to Ethyl because of the relation of marriage. The rights of dower, homestead, and alimony, which had arisen because of the marriage of Maurice and Ethyl, were adjudged and decreed "forfeit" as of the time of the entry of the decree of divorce.

It may be well to consider, before going further, the significance of the marital rights which were thus cut off, the nature of alimony, and the meaning of "forfeit" in connection with the pertinent condition contained in section 22 (k).

It has been stated in *Herrick* v. *Herrick*, 319 Ill. 146, 149 N. E. 820, 823, as follows:

■ Alimony does not arise from any business transaction but from the relation of marriage. It is not founded on contract but on the natural and legal duty of the husband to support the wife. Barclay v. Barclay, 184 Ill. 375, 56 N. E. 636,

51 L. R. A. 351; Audubon v. Shufeldt, 181 U. S. 575, 21 S. Ct. 735, 45 L. Ed. 1009. It is that allowance out of the estate of her husband which is made to a woman on a decree of divorce for her support. The principle on which alimony is given to the divorced wife is that the husband shall furnish his wife what shall be deemed a suitable support, corresponding in degree with his pecuniary ability and social standing. * * *

A decree for divorce is like a final decree in any other case, and cannot be changed except in so far as the statute granting the power to award alimony to the wife authorizes the court to alter it to meet new conditions. Kelley v. Kelley, 317 Ill. 104, 147 N. E. 659. In addition to providing alimony during the joint lives of the parties, the decree, by consent, may provide for the payment of alimony as long as the wife lives. (Storey v. Storey, 125 Ill. 608, 18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417), and thereby give a susbtitute for dower. Adams v. Storey, 135 Ill. 448, 26 N. E. 582, 11 L. R. A. 790, 25 Am. St. Rep. 392. * * *

The petitioners contend that there was an oral agreement which Maurice and Ethyl entered into upon their separation prior to their divorce. Respondent contends that there is insufficient evidence in the record to prove that an oral agreement was entered into by Maurice and Ethyl prior to their divorce on April 30, 1940, or to establish the terms of such alleged oral agreement, or to establish that the written agreement dated April 5, 1945, which date was after the enactment of sections 22 (k) and 23 (u), which were enacted by the Revenue Act of 1942, section 120, which became effective after December 31, 1941, is what it purports to be. With respect to the proof, most of the facts have been stipulated and the only person to give testimony in these proceedings was Ethyl. However, if we accept the contention that there was an oral agreement, entered into in 1940, under which Maurice agreed to make support payments to Ethyl during her life, then we may regard the support payments for life to be a substitute for dower. *Herrick* v. *Herrick, supra.*

The term "forfeit" has the essential meaning of "to lose" as the penalty of some misdeed. The word includes not merely the idea of losing, but also of having the property transferred to another. Where an owner of interests, or rights, is penalized for a wrong by forfeiture, he loses his interests, or rights, and they become vested in the party injured "as a recompense for the wrong which he alone, or the public together with himself, hath sustained." Cyclopedic Law Dictionary, 3d ed.

Having the above in mind, it appears that upon the entry of the divorce decree of the Illinois court on April 30, 1940, Ethyl lost rights which theretofore had been hers because of the marital relation, namely, her rights of dower, homestead, alimony, and other property rights, and that those rights reverted to the former husband, Maurice. Therefore, although Maurice may have been legally obligated to support Ethyl and to recognize her rights as his wife at the time he entered into the alleged oral agreement, he was relieved from such legal obligations, which had arisen because of the marital relation, upon entry of

the decree of the Illinois court, which decree has not been modified. It would appear that after the entry of the decree on April 30, 1940, the pre-divorce agreement was not enforceable as an agreement under which Ethyl gave up rights which were hers because of the marriage relation in return for support for her life. Cf. *Thomas E. Hogg*, 13 T. C. 361, 367. It would appear, also, that under the circumstances and in view of the forfeit annexed by law under the court's decree, Maurice's continuance of the support payments after entry of the decree was voluntary.

The case of *In re Moser*, 145 F. 2d 523, relied upon by this Court, is distinguishable because in that case it was provided in the separation agreement that in case of divorce the agreement should be incorporated in the divorce decree and made part thereof regardless of whether a divorce was granted by such decree to the husband or to the wife, and when the husband obtained a divorce by default decree, the decree made no reference to alimony, i. e., the decree was silent on the matter. Such decree is entirely different from a decree which declares forfeit the wife's rights to dower and alimony which are rights of the marital relation.

In view of the decree of the Illinois court, the written agreement which was executed 5 years later, on April 5, 1945, must be regarded as ineffectual insofar as it purports to effectuate a release by Ethyl of her dower, support, and other marital rights to Maurice in consideration for his agreement to make support payments to her for life. When the written agreement was executed, Ethyl no longer possessed dower, support, and other rights resulting from her marriage to Maurice because those rights had been declared forfeit by a court of competent jurisdiction and the court's decree was not modified after its entry at any time. See *Smith* v. *Johnson*, 321 Ill. 134, 151 N. E. 550. Also, because of the court decree, the written agreement executed in 1945 might be viewed as in contravention of public policy. *Vayette* v. *Myers*, 303 Ill. 562, 136 N. E. 467, certiorari denied 260 U. S. 749.

No case is cited where a deduction for support payments has been allowed under section 23 (u) where a former wife has been explicitly barred from dower and alimony rights in a divorce decree. In my opinion the payments involved in these proceedings were not in discharge of a legal obligation of the former husband, Maurice, which, *because of the marital relationship*, were incurred. See *Frederick S. Dauwalter*, 9 T. C. 580; *Ben Myerson*, 10 T. C. 729; and *Benjamin B. Cox*, 10 T. C. 955, affd. 176 F. 2d 226. I do not believe that this conclusion is inconsistent with the reasoning in *Lerner* v. *Commissioner*, 195 F. 2d 296.

To hold that the payments of Maurice in the taxable years come within the scope of section 22 (k) represents an enlargement of the

statute beyond its clear terms and the intendment of the Congress. I would conclude that the payments by Maurice to his former wife, in the taxable years, were personal expenditures. If he was legally obligated to make them in each of the taxable years, his obligation must have been founded upon some legal obligation which arose not because of the marital relationship but because of some other relationship. Section 22 (k) does not apply to every sort of legal obligation which a former husband may incur. I respectfully dissent.

MULRONEY, *J.*, agrees with this dissent.

---

WITHEY, *J.*, dissenting: I cannot concur in the majority result in this case because, in my view, it has the effect of nullifying the basic language of section 22 (k). In that section Congress obviously granted relief to husbands who paid periodic amounts to their wives incident to a divorce or legal separation only when such amounts are paid in discharge of an obligation arising *because of the marital or family relationship*. Unlike *Thomas E. Hogg*, 13 T. C. 361, relied upon by the majority as most strongly supporting its conclusion, the divorce court in this case specifically and unequivocally severed and put an end to the family marital obligation of the husband to support his wife. From that point on, the oral agreement and the written agreement entered into subsequent to the divorce had the same character from the standpoint of section 22 (k) as though the contract had been made by the petitioner to support a person to whom he had never been married.

It is true the contract, if otherwise valid, under Illinois law retained its life beyond the divorce, but the consideration thereafter ceased to be the family obligation of petitioner. Even though the contract outlived the divorce, it was still subject to all the infirmities of contracts generally, such as failure or lack of consideration. The majority has reached its conclusion on what is not the crucial point of the case, namely, whether the agreement being initially an oral one was incident to a divorce in view of its not having been reduced to writing until subsequent to the decree. Even though it had been originally in writing prior and incidental to and in anticipation of the divorce decree, the marital obligation could not possibly be said to remain as a basis for the contract after the decree of the divorce court which had jurisdiction over the marital status of the parties where that decree had expressly not only severed the marital relationship but barred any obligation of petitioner to his former wife growing from that relationship. This is a new issue before this Court and the majority opinion unwarrantedly extends the operation of the law beyond the point Congress plainly and obviously intended.

TURNER, PIERCE, and MULRONEY, *JJ.*, agree with this dissent.