[Civ. No. 599.    Fifth Dist.    June 6, 1966.]

VIOLA BROWN, as Executrix, etc., Plaintiff and Appellant, v. PAUL G. BARHAM, Defendant and Respondent.

Siemon & Patterson and R. D. Patterson, Jr., for Plaintiff and Appellant.

Di Giorgio, Davis & Nairn and John M. Nairn for Defendant and Respondent.

CONLEY, P. J.—By this suit, brought during her lifetime, Laura R. Barham asked the court to determine that the sum of $45,377.66, won by her husband, Paul G. Barham, at the Agua Caliente Race Track, was the community property of the parties, and to order ''that the whole of said community fund or such part thereof as may be found to be just be awarded to plaintiff.'' A motion for summary judgment was made by Mr. Barham; his declaration as to the facts was uncontradicted; the motion was granted on the ground that questions of law alone were presented and that the plaintiff had no right to any of the money won at the track. Since the filing of the appeal, Mrs. Barham died and Viola Brown, as executrix of her estate, was substituted as appellant.

The Barhams were married on May 31, 1938. Each of them having filed a suit for divorce, a hearing of the consolidated cases was held on December 16, 1964; at a preliminary conference of counsel in the judge's chambers, a mutually satisfactory disposition of issues legitimately subject to agreement was worked out; immediately thereafter, in open court, it was stipulated that Mr. Barham's complaint would be dismissed and the case heard on Mrs. Barham's complaint; that the community property then owned by the married pair should be divided in a specific way; and that findings of fact and conclusions of law would be waived. At the conclusion of the trial on the same day, the judge ordered that a divorce be granted to Mrs. Barham and that the property settlement as stipulated to in open court should be approved and adopted. Following one of the facets of the stipulation, Mr. Barham was awarded the community savings account of approximately $800, subject, however, to a payment to Mrs. Barham of $700. The division of this sum was actually made on December 18

by the defendant, Mrs. Barham receiving the $700 and Mr. Barham retaining the balance of $100.

On the following day, December 19th, the defendant went to the Agua Caliente Race Track in Baja California, and using the $100 won $45,377.66.

There is nothing in the record to show positively when the result of this gambling adventure became actually known by Mrs. Barham or her divorce attorney who was in active practice in Bakersfield. However, it is difficult to conceive how a startling news story of this kind could have escaped either of them during the interval between the winning of this fantastic sum and the actual signing and filing of the formal decree of divorce; that document was prepared by the attorney of record for Mrs. Barham; it was approved as to form by the attorney for Mr. Barham, signed and filed by the trial judge on December 29, 1964, and entered on December 30, 1964. All of the property mentioned in the formal decree itself was divided between the parties in accordance with the previous stipulation and the order for judgment. Neither the stipulation itself, which preceded the winning of the money, nor the decree, which followed the successful betting spree of the defendant, mentioned the winnings. No motion for a new trial was made by either party, and the interlocutory decree of divorce became final.

Thereafter, Mrs. Barham brought this action through new attorneys.

In the instant case, the defendant stated in his answer that the money won was his separate property; he denied that Mrs. Barham had any interest in the winnings or that any part thereof was community property. As a first affirmative defense, he alleged that on December 16, 1964, the Barhams agreed to a disposition of their property in open court, that this oral contract was approved by the court, and that by virtue of the stipulation followed by the interlocutory decree of divorce, the defendant was awarded all savings and bank accounts. Defendant prayed that the complaint be dismissed and that he be allowed his costs of suit.

 Mr. Barham's declaration in support of his motion for a summary judgment stated the contents of the oral agreement and stipulation concerning the division of the property made in open court on the 16th day of December, 1964, and continued:

"Thereafter, the Court heard the testimony of the plaintiff

and the corroborating witness and the disposition as appears in the minutes is as follows:

" 'DISPOSITION: Interlocutory Decree of Divorce granted plaintiff on the ground of Extreme Cruelty. The above stipulations as set forth and stated into the record are hereby approved and granted.'

"A copy of the minute order of the Court is attached hereto as Exhibit 'B' and made a part hereof for all purposes.

"Declarant states that he can competently testify to all the facts set forth above if called.

"3. That thereafter, on the 18th day of December, 1964, declarant paid to Laura R. Barham the sum of $700.00 in compliance with the order of the Court.

"4. That on December 19, 1964, declarant went to Agua Caliente racetrack and won the sum of $45,377.66. That all of said sum is the separate property of the defendant and declarant.

"Declarant has fully complied with all of the orders of the Court and has paid to the plaintiff herein all of the sums awarded to her by the Court, including the sum of $700.00, as her share of the savings account as set forth in Exhibit 'B'.

"Defendant can competently testify to all of the facts set forth above."

Attached to the declaration is a copy of the minutes of the court made at the time the divorce was granted which in part read as follows:

"It is further stipulated that the defendant in action 90486 pay to plaintiff the sum of $700.00 cash as her share of the savings account.

"It is further stipulated that the defendant pay to plaintiff $70.00 per month alimony until further order of Court.

"It is further stipulated that the household furniture and furnishings be awarded to the plaintiff and the balance of the community property be awarded to defendant.

"Exclusive occupancy of the family residence to the plaintiff with the said residence to remain as joint tenancy. The defendant is to make the house payment of $57.00 per month plus all of the upkeep and payment of the taxes."

As another exhibit attached to Mr. Barham's declaration is a stenographic report of the proceedings at the hearing of the two divorce cases.

The first point urged by appellant is that the declaration of Mr. Barham was insufficient to authorize the summary judgment. This contention is without merit. *Towne Development*

*Co.* v. *Lee,* 63 Cal.2d 147 [45 Cal.Rptr. 316, 403 P.2d 724], holds that a summary judgment is proper if (1) the affidavits in support of the moving party, when strictly construed, are sufficient to sustain a judgment in his favor, and (2) the affidavits, if any, filed by the opposing party, when liberally construed, do not show facts sufficient to present a triable issue.

*Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785], states that the ''aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial.''

██  Appellant argues that there were two issues of fact, which required a trial: (1) as to whether the trial court in the divorce case wished to make an effective division of the community property at the hearing, and (2) whether the parties by filing a joint income tax return for monies earned by them during the year 1964, thereby made an implied agreement that the gambling winnings were community property.

With respect to the first point, the trial judge was bound by the law as it existed, and if there was any secret intention on his part relative to the applicability of the objective proceedings, it would not serve to change the law applicable to the situation. It is also clear that at the time the 1964 joint federal income tax return was made, it was permissible for parties as to whom an interlocutory decree of divorce had been granted during the taxable year to make a joint return without thereby committing either party as to the community or separate nature of the income mentioned in the return. (See *Estate of Neilson,* 57 Cal.2d 733, 744, fn. 2 [22 Cal.Rptr. 1, 371 P.2d 745]; Revenue Act of 1948, §§ 301, 303; 26 U.S.C.A. §§ 2, 6013; *Hofferbert* v. *Marshall,* 200 F.2d 648, 650-651.)

''. . . No triable issue having been presented and the sole remaining question being one of law the same was appropriately determined on motion for summary judgment. [Citing authorities.]'' (*Michelman* v. *Frye,* 238 Cal.App.2d 698, 702 [48 Cal.Rptr. 142].)

Appellant next argues that section 169.2 of the Civil Code, adopted by the Legislature in 1959, does not support the respondent's position.

The appellant contends that ''. . . the rendition of an interlocutory judgment of divorce'' means the ''entry'' of such a judgment. There can be no question that the formal written decree was not signed and filed until December 29, 1964, and that it was not entered until December 30, 1964. The minute

order for judgment made December 16th was not formally a judgment. (*Prothero* v. *Superior Court,* 196 Cal. 439 [238 P. 357].) *Phillips* v. *Phillips,* 41 Cal.2d 869, 874 [264 P.2d 926], correctly held that a memorandum of judgment filed with the clerk does not constitute a judgment. As was said by the Supreme Court:

"It does not follow, however, that the memorandum is the judgment. Until a judgment is entered, it is not effectual for any purpose (Code Civ. Proc., § 664), and at any time before it is entered, the court may change its conclusions of law and enter a judgment different from that first announced. [Citations.] Moreover, a judge who has heard the evidence may at any time before entry of judgment amend or change his findings of fact. [Citations.]"

In *Marsh Bros. & Gardenier, Inc.* v. *United States Fidelity & Guaranty Co.,* 97 Cal.App. 474, 478 [275 P. 886], the court makes the following comment:

"A point is made that the superior court made an oral judgment at some time prior to the entry of judgment by the clerk, but if so, this was ineffectual until entered under the provisions of section 664 of the Code of Civil Procedure." (Accord: *Ulrey* v. *Gillett,* 147 Cal.App.2d 621, 624 [305 P.2d 611].)

The clerk keeps among his records a book called a "judgment book" in which judgments are entered (Code Civ. Proc., § 664), and it is well established that entry of a judgment consists of copying the document at large in the judgment book. (Code Civ. Proc., § 668; *Wilson* v. *Los Angeles County Employees Assn.,* 127 Cal.App.2d 285 [273 P.2d 824]; *Wilson* v. *Durkee,* 20 Cal.App. 492 [129 P. 617].)

Furthermore, section 664 of the Code of Civil Procedure reads in part: "In no case is a judgment effectual for any purpose until entered."

We also concede that the judge might have changed his mind about the provisions which had been ordered at any time before the entry of the formal judgment; he might have required, on his own motion or on application of one of the parties, that the judgment as announced should be set aside, and that the parties could offer additional evidence; later, the court might also have granted a new trial if either side had requested it. But none of these things was done. The agreement and stipulation of the parties was accepted by the court and later incorporated, unchanged, in the formal judgment.

It would seem that an oral property settlement may be

made by the parties in a divorce case in a situation such as this, particularly when the agreement is in the form of a stipulation approved by the court. It is said in 26 California Jurisprudence 2d, Husband and Wife, section 62, page 129:

''Although separation agreements between the spouses making provision for their support and the support of their children are required to be in writing, . . . property settlement agreements may be made orally, and are not required to be in writing, particularly if they are already executed.'' (*Durker* v. *Zimmerman*, 229 Cal.App.2d 203 [40 Cal.Rptr. 227]; *Baker* v. *Baker*, 192 Cal.App.2d 730 [13 Cal.Rptr. 772].)

And when a court approves such an express and definite stipulation between the litigants, the accuracy and binding effect are even greater than they would be otherwise. (*Harris* v. *Spinali Auto Sales, Inc.*, 240 Cal.App.2d 447 [49 Cal.Rptr. 610]; *Atchison T. & S. F. Ry. Co.* v. *Hildebrand*, 238 Cal.App.2d 859, 861 [48 Cal.Rptr. 339].)

The appellant cites *McLaughlin* v. *McLaughlin*, 141 Cal.App.2d 494 [296 P.2d 878], to support her contention that a property settlement between spouses must be in writing; we note, however, that section 159 of the Civil Code relating to separation agreements is not applicable to all property settlement agreements. The only authority cited on the point in the *McLaughlin* case is *Fitch* v. *Tyler*, 105 Cal.App. 306 [288 P. 74], which only stands for the principle that section 159 of the Civil Code requires a writing of separation agreements.

Here, the agreement made orally in open court and approved by the judge was not a separation agreement; it did not have to be in writing, particularly in view of the law which permits marked informality in a contract between married persons with respect to their property. (Civ. Code, § 158; *Durker* v. *Zimmerman, supra,* 229 Cal.App.2d 203, 205; *Baker* v. *Baker, supra,* 192 Cal.App.2d 730; 26 Cal. Jur.2d, Husband and Wife, § 54, pp. 116-117; § 62, p. 129.)

We come now to an analysis of section 169.2 of the Civil Code, which reads as follows:

''After the rendition of an interlocutory judgment of divorce and while the parties are living separate and apart, the earnings and accumulations of the husband are the separate property of the husband.''

This is a substantive provision of law which makes the husband's earnings his separate property after a specified time, namely, the ''rendition'' of the interlocutory judgment of divorce. Before the adoption of this code section, the Califor-

nia courts had held that property which would have had a community character if it had been accumulated before divorce, but which was acquired by a husband in the period between the granting of the interlocutory decree and the final decree, was community property of the married couple. (*Brown* v. *Brown*, 170 Cal. 1, 4 [147 P. 1168].)

The enactment of section 169.2 was clearly remedial; it was the aim of the Legislature to permit a husband to start anew financially after the court's division of the community property. This, we conclude, was the reason for the use by the Legislature of the word "rendition" with respect to the judgment, rather than the word "entry." The appellant maintains that the two words have identical meanings, that one is in effect a synonym for the other. It should be remembered that findings of fact and conclusions of law were expressly waived in this case and that the court's order for judgment was entered in the court's minutes on December 16, 1964.

In *Brownell* v. *Superior Court*, 157 Cal. 703, 707 [109 P. 91], it is said:

" 'Findings of fact, however, are required only "upon the trial of a question of fact," and they may in all instances be waived. Wherever they are waived or are not required, the entry of its decision in the minutes of the court constitutes the "rendition of the judgment" in the same manner as it did under the former system.' "

The meaning of the phrase "rendition of judgment" as above defined is approved in the following cases: *Smith* v. *Ross*, 57 Cal.App. 191, 193-194 [207 P. 55]; *Aspegren & Co., Inc.* v. *Sherwood, Swan & Co.*, 199 Cal. 532, 537 [250 P. 400]; *Engleman* v. *Green*, 125 Cal.App.2d Supp. 882, 884 [270 P.2d 127].

Thus, the judgment was "rendered" and section 169.2 of the Civil Code became operative on December 16, 1964.

The last point urged by appellant is that irrespective of the divorce court proceedings, the gambling money was acquired by the respondent prior to the filing of the interlocutory decree and that, therefore, such money is community property. (Civ. Code, §§ 164, 687.) This contention is conclusively answered by the provisions of section 169.2 of the Civil Code, which we have just discussed.

The case, in its entirety, presents a situation in which there was an oral property settlement agreement and stipulation between the parties approved by the court; the making

and entry of the court's order for judgment after findings had been waived and which, therefore, constituted the rendition of a judgment; an actual division of the property in accordance with the stipulation, agreement and order for judgment; the subsequent use by the husband of his divided share of the community money in gambling activity; a later entry of the judgment in accordance with the order for judgment theretofore rendered, with no proceedings of any kind questioning the property provisions as ordered. It might well be asked whether if the husband had taken his $100 to Agua Caliente and, like most horse race betters, had lost it, he could have required his wife to repay him half the amount of his losses. It is our view that the appellant is wholly without right to recover.

The judgment is affirmed.

Stone, J., and McMurray, J. pro tem.,* concurred.

*Assigned by the Chairman of the Judicial Council.