BETTY C. PRINCE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6338-74.    Filed September 22, 1976.

*Allan I. Grossman,* for the petitioner.
*John O. Kent,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1971 in the amount of $1,169.67. On brief, respondent concedes one issue leaving for decision the sole question of whether certain payments received by petitioner during 1971 were periodic payments of alimony, taxable to her under section 71, I.R.C. 1954.[1]

All of the facts in this case have been stipulated and are summarized below. The stipulation of facts together with exhibits attached thereto are incorporated herein by this reference.

Betty C. Prince, petitioner, resided in Mission Viejo, Calif., at the time of filing the petition herein. Petitioner timely filed her 1971 individual income tax return.

In 1964, petitioner instituted an action for divorce against her then husband, Floyd J. Prince (hereinafter husband or former husband), in the Superior Court of the State of California for the County of Los Angeles. Petitioner's husband filed an answer to said complaint and additionally filed a cross-complaint seeking a divorce from petitioner.

On October 29, 1965, the action for divorce was called for trial before a judge without a jury. On that same day, the parties entered into an oral agreement as to the terms of the divorce. At trial, said agreement was offered into evidence as a joint stipulation and recited into the record by petitioner's counsel. In pertinent part the agreement provided as follows:

In lieu of alimony the husband will pay to the wife the fixed sum of $77,440.00, payable regardless of the death or remarriage of either of the parties, and regardless of their other income, said payment to be made at the rate of $640.00 per month for 121 months, of which amount the wife shall allocate $250.00 per month as child support at $125.00 for each child until each child or either child shall die, marry, become emancipated, or attain the age of 21 years. At the happening of such event the obligation to so allocate shall cease. The husband shall and will pay all and any income taxes and discharge any income tax liabilities accruing to the wife by virtue of those payments made by any taxing au-

---

[1] All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.

thority, and the husband shall further provide and pay for the accounting services for preparing and filing any income tax returns for the wife.
\* \* \*

The wife waives any and all right to alimony and accepts the lump sum payment of $77,440.00, over the term as herein provided, in place and instead of alimony or support. \* \* \* [2]

Additional provisions of the stipulated agreement included such matters as the ownership of certain properties and the payment of medical and educational expenses of the parties' children.

The court accepted the parties' stipulated agreement and directed that the husband should continue [3] to enjoy reasonable visitation rights to the children and instructed petitioner's counsel to incorporate the stipulation into an "attorney order." The husband then withdrew his answer to the divorce complaint and his cross-complaint, and the proceeding was heard as a default. The court granted petitioner's divorce and instructed counsel for petitioner to prepare the interlocutory judgment of divorce incorporating the terms of the above-described stipulation.

A minute order summarizing the above proceedings was prepared by the clerk of the court on October 29, 1965. It included the statement "A stipulation is recited into the record by counsel for plaintiff; said stipulation is ordered prepared in writing and filed." The judgment was prepared by petitioner's counsel and approved by her husband's counsel on or about November 22, 1965, filed with the Superior Court on November 29, 1965, and entered into the judgment book on November 30, 1965.[4] The pertinent parts of the judgment are referred to in footnotes 2 and 5.

Subsequently, on June 22, 1966, the interlocutory judgment was modified by striking certain language on pages 1 and 3 of the interlocutory judgment at the request of the former husband, in

---

[2]These provisions of the stipulation are quoted from the written interlocutory judgment of divorce prepared after trial and entered Nov. 30, 1965, and the quoted portion of said judgment incorporated verbatim the oral stipulation made in open court as verified from the copy of the partial transcript of the proceedings filed as an exhibit herein. The written interlocutory judgment also ordered Floyd Prince to pay petitioner $77,440 at the rate of $640 per month for a period of 121 months, the first payment to be due and payable Nov. 1, 1965. See n. 5, p. 1061 infra.

[3] From the discussion of counsel and the court included in the transcript, it appears an order was outstanding granting the husband reasonable visitation rights to the children.

[4] Final judgment of divorce was granted to petitioner on Feb. 9, 1966.

order to conform the terms of the judgment with the stipulated agreement of October 29, 1965.

On or about November 1, 1965, petitioner received her first payment of $320 called for under the agreement and interlocutory judgment.[5] During 1971 petitioner received $7,040 from her former husband pursuant to the agreement and interlocutory judgment but did not report any part of said sum as taxable income on her 1971 income tax return.[6]

The payments called for by the stipulated agreement, incorporated in the interlocutory judgment, had not been the subject of any written separation agreement between petitioner and her husband, nor the subject of a court decree, order, or judgment, prior to October 29, 1965.

At all times relevant hereto, section 664 of the California Code of Civil Procedure, applicable to the action for divorce described herein, provided in pertinent part as follows:

If the trial in a superior * * * court has been had by the court [without a jury] judgment must be entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision; * * *. In no case is a judgment effectual for any purpose until entered.

Respondent determined that the payments received by petitioner during 1971 were periodic alimony payments under sections 71(a)(1) and (c)(2), and accordingly determined the deficiency at issue herein.

Section 71(a)(1)[7] requires a divorced or legally separated wife to include in gross income periodic payments received from her husband after the decree of divorce or separate maintenance pursuant to a legal obligation which, because of the marital relationship, is imposed on or incurred by the husband under a

---

[5] The judgment, as prepared by petitioner's attorney, ordered the installment payments to petitioner to be made at the rate of $640 per month for a period of 121 months, the first payment of $320 to be due and payable on the first day of November 1965 and said payments of $320 to be made twice a month on the 1st and 15th of each month thereafter until the total sum of $77,440 has been paid.

[6] On brief respondent concedes that $1,500 of the amount received by petitioner in 1971 is nontaxable child support under sec. 71(b).

[7] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
(a) GENERAL RULE.—
    (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

decree or written instrument incident to divorce or separation. Section 71(c)(1) [8] provides that installment payments on a lump-sum obligation specified in the decree or written instrument shall not be treated as periodic payments for purposes of subsection (a). However, section 71(c)(2) [9] provides that installment payments are to be treated as periodic payments of alimony, to a limited extent, if under the divorce decree or written instrument such payments are to be made over a period ending more than 10 years from the date of the decree or written instrument.

The stipulated agreement with which we are concerned provided that petitioner's former husband was to pay a principal sum of $77,440 by semimonthly installment payments of $320 over a period of 121 months. Thus the sole question we must decide is whether the payments received by petitioner come within the ambit of section 71(c)(2).

Petitioner contends that the payments received from her former husband do not satisfy the requirements of section 71(c)(2) because (1) there was no written instrument incident to the decree granting her a divorce from her former husband; and (2) under section 664 of the California Code of Civil Procedure, the effective date of the interlocutory divorce decree was November 30, 1965 (when it was entered), and thus petitioner's former husband was obligated to make the installment payments over a period (beginning November 1, 1965) less than 10 years from the (effective) date of the interlocutory judgment. Consequently, petitioner concludes that the payments she received in 1971 were not includable in her income under section 71(a)(1).

Respondent makes two arguments in support of his deficiency determination: (1) That the court-transcribed oral stipulation

---

[8] SEC. 71(c). PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

[9] SEC. 71(c)(2). WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

made in open court constituted a writing within the meaning of section 71, and that under California law petitioner's former husband became obligated as of October 29, 1965 (the date the interlocutory divorce judgment was rendered), to make the payments specified therein over a period of 121 months; and (2) that under the facts in this case the effective date of the judgment in the divorce matter was October 29, 1965, notwithstanding section 664 of the California Code.

At the outset we note that the specific statutory requirement which must be satisfied in order to come within the terms of the exception under section 71(c)(2) is that the installment payments must or may be payable "over a period ending more than 10 years *from the date* of [the] decree, instrument, or agreement." (Emphasis added.) Thus the fact that the payments are to extend over a period of more than 10 years will not necessarily guarantee that the 10-year period required by the statute is satisfied.

Accordingly, in order to determine whether the payments received by petitioner satisfied the requirements for periodicity described in section 71(c)(2), we must first determine the *source* of the obligation of petitioner's former husband to make the installment payments to her; whether it was the stipulated agreement or the interlocutory judgment of divorce. *William C. Wright,* 62 T.C. 377 (1974), on appeal to the Seventh Circuit; *Joslin v. Commissioner,* 424 F.2d 1223 (7th Cir. 1970), affg. 52 T.C. 231 (1969); *Gordon L. Munderloh,* 48 T.C. 452 (1967); *Spicknall's Estate v. Commissioner,* 285 F.2d 561 (8th Cir. 1961), revg. a Memorandum Opinion of this Court; *Commissioner v. Newman,* 248 F.2d 473 (8th Cir. 1957), affg. 26 T.C. 717 (1956); *Commissioner v. Blum,* 187 F.2d 177 (7th Cir. 1951), revg. 10 T.C. 1131 (1948); *Blum v. Commissioner,* 177 F.2d 670 (7th Cir. 1949), revg. a Memorandum Opinion of this Court. The question is one of fact and depends upon the intent of the parties to the agreement and the law of the State under which the decree is entered. *Gordon L. Munderloh, supra; Joslin v. Commissioner, supra.* We find that the source of the legal obligation to make the installment payments in controversy herein was the court-transcribed oral stipulation made in open court on October 29, 1965,[10] *Gordon L. Munderloh, supra,* and that under that

---

[10] The effective date of the interlocutory judgment of divorce is thus irrelevant, and we do not consider herein respondent's second argument.

stipulated agreement the installment payments were to be paid over a period ending more than 10 years from the effective date of that agreement.

Petitioner and her then husband entered into an oral agreement on October 29, 1965, as to the terms of their pending divorce. For the most part the agreement pertained to settlement of the parties' property rights. Whether the parties' agreement is deemed a "separation agreement" or merely a contract between husband and wife respecting property (see *Brown v. Barham,* 51 Cal. Rptr. 718, 722 (5th Dist. Ct. App. 1966)), California law, as it existed at the time of the agreement, clearly authorized the parties to enter into such a binding legal agreement insofar as it related to their respective property rights. See Cal. Civ. Code tit. 1, secs. 158 and 159; [11] see also *Brown v. Barham, supra.*

Furthermore, and crucial to our decision herein, when petitioner and her husband entered into the oral property settlement agreement and offered it into evidence at the divorce proceeding by way of stipulation, it was accepted by the court. Under California law the stipulation constituted not only an agreement between the parties but also an agreement between them and the court, and the court was bound to enforce the terms of the stipulation for their benefit. *Webster v. Webster,* 216 Cal. 485, 14 P.2d 522 (1932); *Capital Nat. Bank of Sacramento v. Smith,* 62 Cal. App. 2d 328, 144 P.2d 665 (3d Dist. Ct. App. 1944). And under the facts as stipulated herein it is clear that the California Superior Court hearing the petitioner's divorce case adopted the parties' stipulated agreement; the interlocutory judgment contained no separate findings of fact but merely contained a recitation of the terms of the stipulation. Under such circumstances it has been repeatedly held that the contractual agreement and not the ensuing divorce decree is the

---

[11] Sec. 158. Contracts with each other and third persons

Husband and Wife May Make Contracts. Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the Title on Trusts.

Sec. 159. Contracts; property; separation

A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation.

Cal. Civ. Code tit. 1 was repealed by Stats. 1969, c. 1608, p. 3313, sec. 3, operative Jan. 1, 1970.

source of the payment obligation. See *Gordon L. Munderloh, supra; Spicknall's Estate v. Commissioner, supra; Blum v. Commissioner, supra; Commissioner v. Blum, supra;* cf. *Commissioner v. Newman, supra.* Petitioner's contention that the oral stipulation did not bind the court because it dealt with legal conclusions, i.e., the rights of the parties' minor children, and because the court had to determine for itself whether adequate grounds for granting the divorce existed, overlooks the fact that we are concerned herein only with the effect of the court's acceptance of the stipulation as it pertained to the property settlement. And we have no doubt but that the effect of the court's acceptance was to bind itself and the parties to the terms of the stipulation as of October 29, 1965. *Webster v. Webster, supra; Capital Nat. Bank of Sacramento v. Smith, supra.*

The final consideration in determining the source of the installment obligation relates to the intent of the petitioner and her former husband. With respect to this question the courts generally have focused on whether the parties intended the payment obligation to arise at the time the separation or property settlement agreement is made or rather under the divorce decree itself.[12] Notwithstanding petitioner's statement that in the case at bar the parties clearly intended the obligation to arise under the divorce decree, we find no evidentiary support for this conclusion. We find that the parties intended to be presently bound by the terms of their oral agreement.[13] The terms used by the parties in the agreements which were recited into the court record by petitioner's attorney, as evidenced by the transcript of the divorce proceedings, clearly indicate that the parties had entered into a contract whereby they intended to presently impose mutual obligations upon each other. Petitioner's counsel in the divorce proceedings stated in open court at the beginning of the proceedings that the parties "have

---

[12] But see *Spicknall's Estate v. Commissioner,* 285 F.2d 561 (8th Cir. 1961), where the court seemed to focus solely on whether such agreements were authorized by State law and did not make any reference to the contracting parties' intent.

[13] This question more often arises where the parties have entered into an agreement prior to the divorce proceedings with the understanding that the agreement will be incorporated in any divorce decree subsequently entered. However, the question is of critical importance here, despite the proximity of the agreement to the divorce proceedings because the effective date of the agreement and the divorce decree might be different.

now arrived at a property settlement agreement" and, with the court's permission, proceeded to memorialize the agreement by reading it into the record. Only after this was done did petitioner's husband withdraw his answer and cross-complaint so the court could proceed as in default. This intent is further and conclusively demonstrated by the fact that the parties commenced performance of the contract on November 1, 1965, even though the interlocutory judgment was not prepared by petitioner's attorney until sometime afterwards and said judgment was not entered, i.e., signed by the judge and filed in the judgment record book, until November 30, 1965. And so that the terms of the judgment conformed to the parties' agreement, the date specified for the first installment payment under the written judgment was November 1, 1965, and on June 22, 1966, the judgment was modified by striking certain language contained therein, not pertinent hereto, which was not a part of the stipulated agreement.

Additionally, we note that our finding herein is in accord with another of the parties' intended effects from the agreement, i.e., the tax effect. It is abundantly clear that petitioner and her former husband specifically considered the tax effects of the proposed installment payments when negotiating their oral agreement. The portion of the stipulated agreement requiring that payments be made over a period of 121 months followed immediately thereafter by a provision obligating the husband to discharge any tax liability accruing to the wife on account of the installment payments is a clear indication that the parties intended the payments to satisfy precisely the requirements of section 71(c)(2). It is unlikely that petitioner's husband would have entered into and performed under the agreement had there been uncertainty as to the effective date of the parties' obligations thereunder. We do not look favorably upon petitioner's attempt herein to contravene the substance and intent of her agreement.

Having determined that the agreement read into the transcribed record and accepted by the court was the source of the installment obligations, we must now consider whether that agreement, so memorialized, satisfies the statutory requirement of a "written instrument."[14] Both sections 71(a)(1) and 71(c)(2)

---

[14] It is clear that the parties' property settlement agreement was "incident to a divorce decree"; petitioner does not contend otherwise.

require that the taxable payments received by the wife be made under a *written instrument.* Petitioner strenuously contends that there is simply no such written instrument, and asserts that we have no choice but to find in her favor since we cannot change this requirement of section 71.[15]

Respondent contends that under the facts of this case the oral stipulation in open court of the petitioner and her husband is a writing within the meaning of section 71. The respondent points to the fact that the oral stipulation was carefully drawn as if drafted after negotiation and due consideration, that said stipulation was orally and knowingly submitted to the court and before a court reporter who recorded the stipulation and reduced it to writing, and that said stipulation was binding upon both the parties and the court.

We must apply the Code as it was enacted by Congress. However, it is clear that the writing requirement imposed by section 71 was designed only to insure adequate proof of the existence of an obligation and the specific terms thereof when a divorce has occurred. *Maurice Fixler,* 25 T.C. 1313, 1316 (1956); *Lerner v. Commissioner,* 195 F.2d 296, 298 (2nd Cir. 1952), revg. 15 T.C. 379 (1950).

There can be no dispute as to the existence of the obligation and the terms thereof when the oral agreement is stipulated in open court, recorded, transcribed, and duly authenticated such as the one at question herein. Furthermore, we have no doubt that the parties and the court intended the transcription of the oral stipulation of agreement to be a written memorialization of the agreement. Section 71 speaks only in terms of a "written instrument"; it does not dictate the medium which may be used nor the form of writing which the instrument must take. We find that under the narrow circumstances present in this case, where the parties submitted a binding agreement by way of joint stipulation in open court which was accepted and adopted by the court, recorded, transcribed, and duly authenticated by a court reporter, the purpose for and requirement of a writing under section 71 are satisfied.

Accordingly, we hold that the installment payments received by petitioner in 1971 were periodic alimony payments in discharge of a legal obligation which, because of the marital

---

[15] Petitioner cites *William D. Smith,* T.C. Memo. 1967-90, and *Le Roy Keebler,* T.C. Memo. 1969-198, in support of her contention.

relationship, was imposed on or incurred by petitioner's former husband under a written instrument incident to her divorce and that the installment payments, under the terms of the instrument, were to be paid over a period ending more than 10 years from the effective date of the instrument as contemplated by sections 71(a)(1) and 71(c)(2). Consequently they are taxable to petitioner.[16]

Because of the concessions made by the parties,

*Decision will be entered under Rule 155.*

---

[16] The answer to the issue between the parties, which we need not and do not decide, concerning the effective date of the interlocutory judgment of divorce is not easy and also raises interesting questions under the internal revenue laws. Sec. 664 of the California Code of Civil Procedure provided that in a divorce proceeding judgment is in no case effectual for any purpose until entered. In *Phillips v. Phillips*, 41 Cal. 2d 869, 264 P.2d 926 (1953), the California Supreme Court said, in substance, that when findings of fact are required and have not been waived, judgment is not *rendered* until the findings have been signed by the trial judge and filed with the clerk, but that the filing of a memorandum signed by the judge met the requirements for *rendition* of a judgment; however, the mere rendition of judgment is ineffectual for any purpose until it is *entered* in the judgment book. On the other hand there is authority in California law, see *Aspegren & Co. v. Sherwood*, 199 Cal. 532, 250 P.400 (1926), that where findings of fact are not required or are waived, a judgment becomes effective when it is entered on the minute book of the court. In the *Phillips* case findings of fact were required so we do not know how the present California court would rule where findings of fact are not required, as seems to be the case here. If the judgment is held to be ineffective until entered the time span between rendition and entry of judgment could change materially the intent of the parties to an oral agreement, as petitioner claims it did here. The attorney for a client who obtains a divorce could completely change the intended tax consequences of a settlement agreement by simply delaying drafting of the judgment decree. See *William C. Wright*, 62 T.C. 377 (1974), on appeal to the Seventh Circuit, where, under Wisconsin law, this Court held that the obligation to pay the installments became effective when an oral agreement between the parties was accepted by the court in an oral judgment that was later reduced to writing and entered.