WILLIAM F. BROOKS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brooks v. Commissioner
Docket No. 1958-80
United States Tax Court
T.C. Memo 1983-304; 1983 Tax Ct. Memo LEXIS 479; 46 T.C.M. (CCH) 299; T.C.M. (RIA) 83304; May 31, 1983. Michael E. Caryl, for the petitioner. Susan B. Watson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's 1976 Federal income tax in the amount of $2,961.14. The sole issue reamining for decision is whether petitioner is entitled to an alimony deduction under section 215 [1] for amounts paid during 1976 for the support of his former wife. *480 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and its attached exhibits are incorporated herein by this reference.
Petitioner William F. Brooks (William) resided in West Virginia at the time he filed his petition in this case. He filed a Federal income tax return for 1976 with the Internal Revenue Service Center at Memphis, Tennessee. Due to marital difficulties, William and his former wife Margaret Brooks (Margaret) separated from one another on September 7, 1974.On May 19, 1976, Margaret obtained a divorce from William in the Circuit Court for Baltimore County. At the time of their separation, William and Margaret did not discuss any support arrangements for Margaret. However, following their separation and prior to their divorce, Margaret requested financial assistance from William for essential living expenses that she was unable to pay from her own resources. Due to their mutual concern and respect, William knew that Margaret's requests for assistance were reasonable and sincere and he obliged her accordingly. This informal arrangement concerning Margaret's support continued throughout the period of their separation. Both Margaret and *481 William were satisfied with the arrangement and intended that it continue after their divorce. Margaret felt that William was in a straitened financial situation and did not wish to place on him an undue burden by requiring him to provide her with more support than he could afford. She thus refused to financially obligate William to provide specific sums for her support nd assumed that he would provide for her as per their present arrangement. Margaret's attorney, however, suggested that Margaret should be protected in the event of any significant change in their respective situations and thus had Margaret and William enter into a stipulation reserving her right to alimony. The divorce decree dated May 19, 1976, provided in part: It is further ADJUDGED, ORDERED and DECREED that the Defendant, William F. Brooks, be and he is hereby denied alimony by reason of his express waiver thereof; and It is further ADJUDGED, ORDERED and DECREED that the award of alimony to be paid by the Defendant, William F. Brooks, unto the Complainant, Margaret M. Brooks, be and it is hereby reserved for future determination and the further Orders of this Court; On the same date, Margaret and William *482 entered into the aforementioned stipulation which was filed with the divorce decree. In its relevant part, this stipulation provided: 3. That the wife does not waive any claim for alimony or support, and although she is not at this time requesting the court to grant alimony to her, she specifically reserves the right to request alimony or support in the future; and that the sole reason for not requesting alimony or support at this time is because the husband is assisting her financially, but neither of the parties are presently able to decide on an arrangement which would be appropriate in a decree of court. William paid $7,970.39 to Margaret during 1976 in response to Margaret's requests for assistance. This amount consisted of payments for rent, electricity, telephone, and medical expenses. William made some of these payments directly to the suppliers of the service. William deducted the above amount as alimony on his 1976 Federal income tax return and Margaret included it on her 1976 return. In his statutory notice of deficiency, the Commissioner disallowed William's deduction for alimony. On April 10, 1981, Margaret and William entered into written stipulations whereby *483 he agreed to pay her a fixed sum of $400 per month until the death of either party or her earlier remarriage. By modified decree of divorce entered on April 16, 1981, the divorce court incorporated these stipulations into its order and directed William to pay Margaret $400 per month as alimony. OPINION William and Margaret separated from one another on September 7, 1974 and were divorced on May 19, 1976. Under the divorce decree, the court reserved Margaret's right to an alimony award for future determination. A stipulation filed by William and Margaret with the decree stated that Margaret reserved her request for alimony "at this time" since "the husband is assisting her financially, but neither of the parties are presently able to decide on an arrangement which would be appropriate in a decree of court." During the period between their separation and divorce, William and Margaret had an informal financial arrangement regarding her support. Margaret hoped to get by as best as she could on her own financial resources but would request monetary assistance from William for those necessities that she did not have the means to pay for. William obliged her and from 1973-1976 provided *484 payments to Margaret for various housing and medical expenses.
The issue is whether William is entitled to a section 215 deduction for those payments made to Margaret in 1976 during the period following their divorce. Petitioner may deduct such payments to the extent they are includable in Margaret's gross income under section 71. Sec. 215(a). Section 71(a)(1) provides: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE.-- (1) Decree of divorce or separate maintenance.-- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. Respondent argues that the requirements of section 71(a)(1) were not satisfied herein since William was under no legal obligation to make the payments to Margaret *485 and that, in any event, there was no written instrument under which an obligation was incurred. Conversely, petitioner contends that an oral understanding that developed during the period of separation legally obligated him to make such payments and that the stipulation filed with the divorce decree constitutes a "written instrument" reflecting such obligation. We agree with respondent. At the time of their separation, there was no understanding or discussion between William and Margaret concerning arrangements for her support. However, William responded to Margaret's requests for financial assistance and paid some of her bills from time to time. Despite their marital difficulties, William and Margaret retained a great deal of respect and concern for each other. Both Margaret and William were satisfied with this informal arrangement. Margaret did not wish to "levy anything steady on him [William]" and therefore did not request that the divorce court order William to pay alimony. If William were able to afford it, she knew that he would provide her with funds to get along. But there was neither an oral nor written agreement concerning such arrangement which obligated William *486 to provide any support. The only evidence of any agreement is the testimony of William and Margaret that William paid some of Margaret's expenses after they were separated. Although such arrangement was mutually satisfactory, we are unable to find that the parties' conduct created an implied contract as to Margaret's support where it is clear that the parties themselves never intended to create obligations. A contract is an agreement which creates an obligation and such agreement may be defined as the concurrence of two or more persons in a common intent to affect their legal relations. Post v. Gillespie,219 Md. 378, 149 A.2d 391 (1959). Since Margaret recognized the difficulty of supporting two households, she did not wish to saddle William with any definite financial obligations. Upon her attorney's advice, however, she had the stipulation filed with the decree whereby she reserved the right to request alimony should circumstances change. Indeed, both parties recognized that if Margaret was unhappy with their informal arrangements, she could seek judicial relief and request a specific alimony determination. But neither Margaret nor William ever had any *487 distinct intention to be bound by their arrangement and neither considered it to be enforceable. Additionally, William and Margaret's arrangement provided no mechanism for determination of a support obligation which would be deemed sufficient under general principles of contract law to create an enforceable bilateral contract. An agreement is not unenforceable for lack of definiteness or of price or amount if the parties specify a practicable method by which the amount can be determined by the court without any new expression by the parties themselves. Foard v. Snider,205 Md. 435, 109 A.2d 101 (1954); 1 Corbin, Contracts, sec. 98 at 433-434. We do not believe that the essential terms of any agreement inferable from the acts and conduct of the parties can be determined by any practicable method. William periodically provided Margaret with support in response to her requests but there was no ascertainable standard for determining the nature and extent of his support obligations. Cf. Jacklin v. Commissioner,79 T.C. 340 (1982). We thus conclude that William's payments for Margaret's support during 1976 were not in "discharge of a legal obligation" *488 within the meaning of section 71(a)(1). Assuming arguendo that there was an implied agreement between the parties, the agreement was not sufficiently memorialized by a "written instrument" within the intendment of section 71(a)(1). Section 71(a)(1) requires a writing which memorializes the agreement between the former spouses concerning support obligations. Prince v. Commissioner,66 T.C. 1058 (1976); Jefferson v. Commissioner,13 T.C. 1092 (1949). The written instrument need not itself be an enforceable obligation. Clark v. Commissioner,58 T.C. 519, 523-524 (1972); Campbell v. Commissioner,15 T.C. 355 (1950). However, writings which provide mere evidence that an agreement may exist are insufficient. Gordon v. Commissioner,70 T.C. 525 (1978) (husband's income tax returns insufficient); Blanchard v. United States,424 F. Supp. 916 (D. Md. 1976) (husband's checks to wife insufficient). While the writing need not satisfy particular formal requirements, [2] it must provide "adequate proof of the existence of an obligation and the specific terms thereof." Prince v. Commissioner,66 T.C. at 1067; *489 Fixler v. Commissioner,25 T.C. 1313, 1316 (1956). The stipulation filed with the divorce decree does not satisfy the requirement since it did not sufficiently memorialize any understanding between William and Margaret. That Margaret declined to request alimony "because the husband is assisting her financially" does not indicate that an agreement existed nor reflect its essential terms. It was a statement indicating that Margaret was receiving something from William, rather than a reference to an agreement with any ascertainable provisions.Section 1.71-1(b)(4), Income Tax Regs. provides that "[s]ection 71(a) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree, instrument, or agreement." The requirement that the instrument be in writing adds the needed certainty to the specificity that is required. [3] Here *490 the writing simply lacked specificity as to any existing obligation or the essential terms thereof. Petitioner cites decisions which have liberally construed the "written instrument" requirement. Prince v. Commissioner,supra;Jefferson v. Commissioner,supra.[4] In each of these cases, however, the writing reflected the existence of a specific agreement with binding obligations and embodied its essential terms. In Prince, we held that an oral stipulation by the former spouses providing for support payments which was made a part of the divorce court record and later transcribed constituted a "written instrument" under section 71(a)(1). *491 The stipulation there, however, was an intended and specific memorialization of the parties' oral agreement: There can be no dispute as to the existence of the obligation and the terms thereof when the oral agreement is stipulated in open court, recorded, transcribed, and duly authenticated such as the one at question herein. Furthermore, we have no doubt that the parties and the court intended the transcription of the oral stipulation of agreement to be a written memorialization of the agreement. * * * We find that under the narrow circumstances present in this case, where the parties submitted a binding agreement by way of joint stipulation in open court which was accepted and adopted by the court, recorded, transcribed, and duly authenticated by a court reporter, the purpose for and requirement of a writing under section 71 are satisfied. [Prince v. Commissioner,66 T.C. at 1067.] In Jefferson, a husband's letter to his wife concerning support provisions satisfied the written instrument requirement since it "embodied the terms of a prior oral agreement or understanding *492 between petitioner and his wife with reference to periodic payments to be made for the wife's support and maintenance, and that the letter confirmed that oral agreement or understanding." 13 T.C. at 1097. See also Campbell v. Commissioner,supra.
It is unfortunate that the statutory requirements were not complied with here. The sincerity and integrity of both Margaret and William were apparent at trial. They retained mutual respect and concern for each other even after their separation and divorce and wished to continue their own informal support arrangements without judicial involvement. They were more secure with their mutual trust than a decree of court. The monetary assistance provided by William is no less in the nature of support than are amounts paid under more precise agreements with binding obligations. However, Congress has imposed safeguards and restricted alimony deductions to certain enumerated situations with well-defined provisions. The support arrangement herein does not meet those requirements. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. See Prince v. Commissioner,66 T.C. 1058, 1067↩ (1976) ("Section 71 speaks only in terms of a 'written instrument'; it does not dictate the medium which may be used nor the form of writing which the instrument must take.")
3. See Herring v. Commissioner,66 T.C. 308, 311↩ (1976) ("In absence of such requirements, disputes would often arise as to the character of the payments, due to the fact that whether the payments are deductible to the transferor is dependent upon whether they are includable in the gross income of the transferee.") In the instant case we note, however, that both William and Margaret treated the payments as alimony and Margaret included such amounts in her income under sec. 71(a).
4. See also Osterbauer v. Commissioner,T.C. Memo. 1982-266↩.